Thomas DUMANSKY, Jr., an infant by his guardians ad litem, Thomas Dumansky, Sr., and Virginia Dumansky and Thomas Dumansky, Sr., and Virginia Dumansky, Individually, Plaintiffs,

v.

UNITED STATES of America, Larson Mortgage Company, Jenkins-Elek Management Inc., Robert R. Jenkins, Sr., Howard Bilodeau, Defendants.

Civ. No. 79–2078.

United States District Court,
D. New Jersey.

Feb. 11, 1980.

Samuel H. Davis, Dubowsky & Davis, Edison, N. J., for plaintiffs.

G. Donald Haneke, Asst. U. S. Atty., Trenton, N. J., James S. Dobis, Morgan, Melhuish, Monaghan & Spielvogel, Livingston, N. J., for defendants.

## OPINION

THOMPSON, District Judge.

This matter, coming before the Court on motion for summary judgment, raises important questions about the scope and application of the Federal Tort Claims Act [hereinafter "FTCA"], 28 U.S.C. § 2671 *et seq.*

Plaintiff Thomas Dumansky, by his parents, seeks damages for injuries sustained on August 17, 1977 when he stepped on a nail protruding from a board located on property adjacent to his home. Plaintiff alleges negligence of one of five named defendants. All defendants have denied negligence and filed cross-claims for contribution pursuant to the New Jersey Tort-

feasors Contribution Act. N.J.S. 2A:53A–1, *et seq.*

When the accident occurred on August 17, 1977 defendant United States of America [hereinafter "USA"], through the Administrator of Veterans Affairs, owned the property on which plaintiff was injured [hereinafter "the property"]. Defendant Larson Mortgage Company had transferred title to USA on July 20, 1977, more than one month before the injury occurred. USA engaged defendant Jenkins-Elek Management, Inc.[1] to manage the property. Jenkins-Elek retained defendant Bilodeau to perform work on the property; and it was Bilodeau, plaintiff alleges, who left the board on the ground causing plaintiff's injury.

Presently before the Court is defendant USA's motion for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. Before resolving this motion, however, a threshold jurisdictional issue not raised by the parties must be addressed.

## I

## JURISDICTION

### 1.

At the outset we note that the nonfederal defendants have not raised any jurisdictional objection to plaintiff's complaint. Despite the failure of any party to address the jurisdictional issue, however, a federal district court must confront the issue *sua sponte*. *Carlsberg Resources Corp. v. Cambria Sav. & L.*, 554 F.2d 1254 (3rd Cir. 1977).

This is so because the federal courts are without power to adjudicate the substan-

tive claims in a lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits. *Id.* at 1256.

With this obligation in mind, we proceed to the jurisdictional issue at hand.

### 2.

The federal courts are courts of limited jurisdiction. Their authority to adjudicate disputes must be found in congressional grants of jurisdiction and in Article III, section 2 of the Constitution. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).[2] This Court's authority to adjudicate the dispute between plaintiff and defendant USA is not here in question. Jurisdiction is properly invoked under 28 U.S.C. § 1346(b).[3] The question is whether the Court has the power to adjudicate the dispute between plaintiff and the nonfederal defendants. Properly viewed, then, this case raises the subtle and complex issue mentioned but not decided by the Supreme Court in *Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 1798, 36 L.Ed.2d 596 (1973), and *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976): Whether the doctrine of pendent jurisdiction confers jurisdiction over nonfederal defendants as to whom no independent basis of jurisdiction exists in an action brought against the United States under the FTCA.

### 3.

The doctrines of pendent and ancillary jurisdiction were designed to extend

---

1. Robert Jenkins, of Jenkins-Elek Management, Inc., has also been named as a defendant.

2. *See also Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Cary v. Curtis*, 44 U.S. (3 Howard) 236, 11 L.Ed. 576 (1845).

3. United States as defendant

(b) . . . the district courts shall have exclusive jurisdiction of civil ac-

tions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

the federal courts' traditional jurisdictional bounds. The existence of "principled differences" between these doctrines is dubious at best;[4] and when courts invoke the doctrines, confusion generally prevails. Our examination of the concept of pendent jurisdiction will therefore begin with the concept of ancillary jurisdiction.

Under the ill-defined concept of ancillary jurisdiction, a district court acquires jurisdiction of a case or controversy in its entirety; and, as an incident to the proper disposition of the matter properly before it, the court may decide related matters raised by the case. *See generally* 12 Wright, Miller & Cooper, Federal Practice & Procedure § 3523 (1975). If a federal court has jurisdiction over the principal action, then, it may also hear any ancillary proceedings irrespective of the citizenship of the parties, the amount in controversy, or any other factor that might determine the existence of an independent jurisdictional grant. *Glus v. G. C. Murphy Co.*, 562 F.2d 880 (3rd Cir. 1977).[5]

While the doctrine of ancillary jurisdiction was evolving, the doctrine of pendent jurisdiction was unfolding in the federal courts.[6] This doctrine generally involves endeavors by plaintiffs to join an independent nonfederal claim with a claim arising under the Constitution, laws, or treaties of the United States.

The foundation of modern pendent jurisdiction is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In adopting a broad definition of the term "case" as used in Article III, the Supreme Court there announced that

> [p]endent jurisdiction, in the sense of judicial *power*, exists whenever . . . the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'

383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (emphasis in original). The state and federal claims must derive from a common nucleus of operative fact such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and the federal claim must have sufficient substance to confer on the court subject matter jurisdiction over the pendent claim. *Id.* *Gibbs* signalled the Court's desire to promote judicial economy, convenience, and fairness to the litigants; specifically, the Court looked to the undesirability of requiring the plaintiff to pursue two

---

**4.** *See generally Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976) (The Supreme Court did not decide whether any principled differences existed).

**5.** In explaining the concept of ancillary jurisdiction, the *Glus* Court noted that in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court had cast grave doubt as to whether ancillary jurisdiction may be extended to situations where there is no independent basis for subject matter jurisdiction. 562 F.2d 880, 886–87 (3rd Cir. 1977). The *Glus* Court recognized, however, that *Aldinger* could be construed as being limited to cases involving 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

Neither reading of *Aldinger* was entirely correct. In *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Supreme Court confirmed the view of most of the lower courts that ancillary jurisdiction does not permit a plaintiff to assert a claim over a cocitizen impleaded by a defendant in a diversity case under Rule 14 of the *Federal Rules of Civil Procedure.* The Court, however, did not attempt to cast doubt on the traditional exercise of ancillary jurisdiction over claims of defendants or intervenors.

> [T]he nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court. . . . [T]he efficiency plaintiff seeks so avidly is available without question in the state courts. 437 U.S. at 376, 98 S.Ct. at 2404.

Nor is *Aldinger* likely to be limited to cases involving 42 U.S.C. § 1983. The clear implication of *Aldinger* and *Kroger* is that the exercise of pendent jurisdiction depends upon the limitations expressed or implied in the statute at issue in each case.

**6.** The doctrine of pendent jurisdiction can be traced back to *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat) 738, 821–23, 6 L.Ed. 204 (1824).

overlapping lawsuits or to forego his federal forum. *See id.* Currie, *Pendent Parties,* 45 U.Chi.L.Rev. 753 (1978).

Most courts of appeals considering the issue have had no difficulty extending *Gibbs* to cases in which an additional party not subject to the federal claim is brought in to answer a state claim. *E. g., Curtis v. Everette,* 489 F.2d 516 (3rd Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). This use of pendent jurisdiction has been termed pendent party jurisdiction. As to the question whether a court has the power to entertain pendent party claims in an action brought under the FTCA, the Circuit Courts deciding the question have divided. *Compare Ortiz v. United States Government,* 595 F.2d 65 (1st Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980) and *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023 (5th Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (exercising pendent party jurisdiction in an FTCA action) *with Kack v. United States,* 570 F.2d 754 (8th Cir. 1978) and *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978) (declining to exercise pendent party jurisdiction in an FTCA action). The Third Circuit has not addressed this issue or set forth the correct measure for determining a court's power to entertain pendent party claims. The governing standards must therefore be determined before deciding whether this Court has the power to entertain such claims.

### 4.

We conclude that *Gibbs* provides the correct measure for determining whether this Court has the power to entertain pendent party claims. This is indeed the holding of the First Circuit Court of Appeals in *Ortiz v. United States Government,* 595 F.2d 65 (1st Cir. 1979).

In *Ortiz,* plaintiffs instituted an action against the United States under the FTCA. The United States filed a third-party complaint seeking indemnification from a nonfederal defendant. This complaint rested upon an independent grant of jurisdiction, 28 U.S.C. § 1345.[7] Thereafter plaintiffs sought to amend their own complaint to add a direct claim against the third-party defendant. The district court denied this motion. The First Circuit reversed, holding that the district court had the power to hear the pendent claim and that the *Gibbs* standards applied on the facts of that case.

One possible distinction between *Gibbs* and *Ortiz* was that *Gibbs* involved a "[c]ase * * * arising under * * * the Laws of the United States" and *Ortiz* involved an FTCA action—most likely a "[c]ontroversy to which the United States shall be a party."[8] *Ortiz v. United States Government,*

---

**7.** `§ 1345. United States as Plaintiff.`

Except as otherwise provided by Act of Congress, the district court shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

**8.** U.S.Const., art. III, § 2, cl. 1, states:

The judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State; —between Citizens of different States;—between Citizens of the same State claiming

Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

The plurality in *Glidden Co. v. Zdanok,* 370 U.S. 530, 563–65, 82 S.Ct. 1459, 1479–1480, 8 L.Ed.2d 671 (1962), stated that Article III's extension of judicial competence over controversies to which the United States is a party conferred jurisdiction over suits to which it is a defendant, including FTCA suits. It has been argued, however, that debate still exists as to whether FTCA actions are federal question "cases" or "controversies" to which the United States is a party. 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3563 at 419 n.19 (1975). One possible position is that an FTCA action could properly be characterized as either a "case" or "controversy". *See Ortiz v. United States Government,* 595 F.2d 65, 69 n.6 (1st Cir. 1979), *citing Moore's Federal Practice* ¶ 0.60 (2.–1) at 607 (2d ed. 1978).

*supra* at 69. The Court was not persuaded, however, that this distinction was material. True there were authorities for the proposition that the term "controversies" was less comprehensive than "cases." *Id.*, citing, e. g., *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); yet these authorities did not justify the conclusion that the scope of a "controversy" for pendent jurisdiction purposes is narrower than the scope of a "case" and that a stricter standard than is set forth in *Gibbs* should therefore be applied in determining whether Article III bars the exercise of pendent jurisdiction in a "controversy" as opposed to a "case." *Chisolm v. Georgia*, 2 U.S. (2 Dallas) 419, 430–31, 1 L.Ed. 440 (1793), was the authority traditionally cited for the proposition that a "controversy" is narrower than a "case." The only distinction there made between "cases" and "controversies," however, was that "controversies" referred to civil suits only. *Chisolm*, then, provided no support for the proposition that civil "controversies" differed from civil "cases.". *Ortiz v. United States Government, supra* at 70.[9] The futility of the distinction was further evidenced by the parties' failure to advance policies in support of its use for pendent jurisdiction purposes.[10]

A second arguable distinction between *Gibbs* and *Ortiz* was that plaintiff's federal and nonfederal claims in *Gibbs* were both asserted against the same party; the claims in *Ortiz* were asserted against different parties. The Court explained that this dif-

ference could have been critical had the nonfederal defendant been brought into the case solely as a consequence of plaintiff's nonfederal claim. *Id.*, relying on *Moor v. County of Alameda*, 411 U.S. 693, 712–15, 93 S.Ct. 1785, 1797–1798, 36 L.Ed.2d 596 (1973).[11] The nonfederal defendant, however, was already a party as a result of the United States's third-party complaint which was founded upon an independent jurisdictional ground, 28 U.S.C. § 1345. The Court thus found no need to decide whether pendent power permits the introduction of a new party into a lawsuit. Instead, the Court held that when a nonfederal defendant was already a party to the suit, Article III did not preclude the exercise of pendent jurisdiction, and the *Gibbs* standards applied.

We adopt the *Ortiz* Court's well-reasoned analysis and conclude that here too, the *Gibbs* standards apply.

Admittedly, this case differs from *Ortiz* in that plaintiff initially named in his complaint both the federal and nonfederal defendants; in *Ortiz*, the plaintiffs sought to add the nonfederal defendant only after that party had already been impleaded by the United States under an independent jurisdictional statute. The Supreme Court has indeed noted that "a more serious obstacle to the exercise of pendent jurisdiction" exists when the party against whom the pendent claim is asserted is not otherwise subject to federal jurisdiction. *Aldinger v. Howard, supra*, 427 U.S. at 18, 96 S.Ct. at 2422.

**9.** Wright, Miller & Cooper, *Federal Practice & Procedure* § 3529 at 147 (1975), contend that nothing has been made of the suggestion that "controversies" are less comprehensive than "cases".

**10.** The dissenters in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), applied the *Gibbs* standards to "controversies," albeit without binding themselves to this approach in the future. 437 U.S. at 378–79, 98 S.Ct. at 2405–2406.

**11.** *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), involved a civil rights action against a sheriff, several deputy sheriffs, and a county; the claims against the county were nonfederal in nature. The Court found that under the *Gibbs* standards the

plaintiff had alleged substantial federal causes of action against the sheriff and deputy sheriffs and that the allegations against the County derived from the same nucleus of operative fact as did the federal claims against the other parties. *Id.* at 710–12, 93 S.Ct. at 1796–97. The Count found that meeting the *Gibbs* standards did not necessarily mean that Article III permitted the exercise of pendent jurisdiction when that jurisdiction would extend over a nonfederal claim. The Court declined to reach the issue, however, because, in its view, assuming *arguendo* the existence of power to hear the nonfederal claims, the district court had not abused its discretion in declining to exercise that power. *Id.* at 715, 93 S.Ct. at 1798.

■ The initial absence of jurisdiction over the nonfederal defendants, however, should not change the result in this case. In an action brought against the United States under the FTCA, the United States may implead a party who may be liable to the United States for all or part of a claim. *United States v. Yellow Cab Co.*, 340 U.S. 543, 551–52, 71 S.Ct. 399, 405, 95 L.Ed. 523 (1951); 28 U.S.C. § 1345. Defendant USA has in fact asserted cross-claims against the nonfederal defendants under the New Jersey Tortfeasors Contribution Act. N.J.S. 2A:53A–1, *et seq.* Independent jurisdiction for these crossclaims can be invoked under 28 U.S.C. § 1345. It is likely that if the nonfederal defendants had not been named in the complaint, USA would have commenced third-party actions against them. In fact, if the nonfederal defendants are dismissed by the Court, USA will likely bring them before this Court once again by third-party action. To dismiss the nonfederal defendants simply because they were initially named in the complaint rather than added to an amended complaint after being impleaded by USA would be to exalt form over substance; it would "defeat the commonsense policy of pendent jurisdiction— the conservation of judicial energy and the avoidance of multiplicity of litigation." *Rosadou v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970). *Maltais v. United States*, 439 F.Supp. 540, 548 (N.D. N.Y.1977).

Indeed, this was the stance adopted most recently in *Maltais v. United States, supra.* There plaintiff instituted an FTCA action against the United States and seven corporate defendants. The Court held that it had the power to exercise pendent jurisdiction over the nonfederal parties. *Id.* at 547. The Court's implied but unarticulated view was that *Gibbs* provided the correct measure for determining whether it could entertain the pendent party claims. In exercising pendent party power, the Court relied in part on its belief that if it had dismissed the nonfederal defendants, the United States would have again brought them before the Court by third-party action. *Id.* at 548.

It is evident that the ultimate monetary liability of the United States cannot be determined with finality in a single lawsuit unless all the parties to this action are properly brought before this Court. Thus, it can be seen that under the Federal Tort Claims Act pendent-party jurisdiction would not necessarily bring parties before a federal court that would not otherwise be subject to federal jurisdiction. . . . The federal interest in this action would favor direct recovery from these seven corporate defendants rather than recovery through the treasury of the United States. Therefore, to deny the existence of pendent-party jurisdiction in an action brought under the Federal Tort Claims Act when no independent jurisdictional predicate exists would mean allowing a plaintiff limited entrance through the back door of the courthouse while maintaining a bolt on the front.

*Id.* at 548.

### 5.

■ Having determined that *Gibbs* provides the correct measure for determining a court's power to entertain pendent party claims, we turn next to the question whether this Court has the power under *Gibbs* to entertain pendent party claims over nonfederal defendants in an action brought under the FTCA. Upon review of the decisions from other jurisdictions, we find most persuasive those permitting the exercise of pendent party jurisdiction. *See Ortiz v. United States Government, supra. Dick Meyers Towing Service, Inc. v. United States, supra. Maltais v. United States*, 439 F.Supp. 540 (N.D.N.Y.1977). We therefore hold that this Court has the power to entertain claims against pendent parties in an action under the FTCA.

■ *Gibbs* dictates a two tiered approach to determining whether a court may exercise pendent party jurisdiction. The first tier looks to Article III limitations, and the second to discretionary considerations. An intermediate tier was recently set forth

in *Aldinger v. Howard, supra* : The statute too must not negate jurisdiction.

## ARTICLE III LIMITATIONS

*Gibbs* held that a district court has power under Article III to hear a nonfederal claim if the federal claim is of sufficient substance to confer subject matter jurisdiction on the court, if both claims derive from a common nucleus of operative fact, and if the plaintiff would ordinarily be expected to try his claims in one judicial proceeding. 383 U.S at 725. These tests must here be met for Article III jurisdiction to exist.

First, plaintiff's claims against the United States are of sufficient substance to confer jurisdiction under the FTCA. To meet this test, the conduct alleged must be conduct for which a private person would be liable in accordance with the laws of the place where the act or omission occurred. 28 U.S.C. § 1346(b). *Ortiz v. United States Government, supra,* at 71. Plaintiff here advances several theories based on conduct for which a private person would be liable in accordance with the laws of New Jersey.[12]

Second, the federal and nonfederal claims share a common nucleus of operative fact. Plaintiff's claims against USA and the nonfederal defendants are inextricably intertwined: The liability of USA depends in large part upon its legal relationship to the nonfederal defendants. Plaintiff's action is based upon a single incident causing his injury. "There is but one set of operative facts at the core of plaintiff's action." *Maltais v. United States, supra,* at 548.

Third, plaintiff would ordinarily be expected to try his claims in one judicial proceeding. Only in this way will the plaintiff be provided with a forum capable of securing "a just, speedy, and inexpensive determination" of actions brought under the FTCA. *F.R.Civ.P.* 1. *Maltais v. United States, supra,* at 548. This is not a case where plaintiff could bring all his claims in the state courts; plaintiff's claim against USA must be brought in federal court. 28 U.S.C. § 1346(b).

We are satisfied, then, that under the standards set forth in *Gibbs* Article III does not preclude the exercise of pendent party jurisdiction in a case brought under the FTCA.[13]

## STATUTORY LIMITATIONS

We turn next to the second hurdle that must be cleared in order to find pendent party jurisdiction over the nonfederal defendants: Congress in the statute conferring jurisdiction must not have expressly or impliedly negated the existence of pendent party jurisdiction. *Aldinger v. Howard, supra,* 427 U.S. at 18, 96 S.Ct. at 2422.

---

12. Plaintiff advances several arguments in support of his position. State law will predominate in the determination of USA's liability. Plaintiff's theories of relief follow. First, Defendants Jenkins-Elek and Bilodeau may have been employees of the Government for whose conduct the Government would be liable. Second, even if Jenkins-Elek and Bilodeau are not Government employees, the Government was engaged in an inherently dangerous activity rendering it liable for the acts of an independent contractor. Third, the Government as owner of the property is under a nondelegable duty and is liable for injuries occasioned by the negligence of the independent contractors that the Government employs. Fourth, the Government is liable for acts of its servants that create an unreasonable risk of harm to trespassers or licensees on the property. Finally, the Government is liable for the negligence of the financially irresponsible contractor it employed.

13. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), arguably signals the Supreme Court's hostility toward attempts by plaintiffs—rather than defendants—to bring in additional parties. There the Court held that ancillary jurisdiction does not permit a plaintiff to assert a claim over a cocitizen impleaded by a defendant in a diversity action under Rule 14 of the *Federal Rules of Civil Procedure.* The Court explained that "ancillary jurisdiction typically involves claims by a defending party haled into court against his will . . . ." The substantial differences between this case and *Kroger,* however, suggest the *Kroger* should not here govern. Indeed, the Court in *Ortiz v. United States Government,* 595 F.2d 65 (1st Cir. 1979), found that *Kroger* was not dispositive of a case arising under the FTCA and permitted the exercise of pendent party jurisdiction over nonfederal defendants.

In *Aldinger v. Howard, supra,* the Supreme Court rejected the concept of pendent party jurisdiction when asserted against a municipal corporation in an action brought under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The Court announced that pendent jurisdiction is subject to both statutory and Article III limitations. Specifically, the Court held that since Congress had by implication negated the existence of federal jurisdiction over a municipal corporation in a claim brought pursuant to 42 U.S.C. § 1983, pendent party jurisdiction could not be used to assert a state law claim against the same entity in the federal court.

In rejecting pendent party jurisdiction in cases involving Section 1983, the Court explained that it was not prepared to make "any sweeping pronouncement upon the existence or exercise" of pendent party jurisdiction.[14] *Aldinger v. Howard, supra,* at 18, 96 S.Ct. at 2422. In the Court's view, other statutory grants might call for a different result. *Id.*

We are convinced that Congress has not expressly or impliedly negated the existence of pendent party jurisdiction under the FTCA. Congress granted to the federal courts exclusive jurisdiction under the FTCA. 28 U.S.C. § 1346(b).[15] "[O]nly in a federal [district] court may all of the claims be tried together." *Aldinger v. Howard, supra,* at 18, 96 S.Ct. at 2422. If plaintiff is barred from suing the nonfederal defendants in the instant suit, he will be forced to pursue his claims in both federal and state forums. The FTCA's grant of jurisdiction, however, signals Congress's intent to determine the monetary liability of the United States in a single action. *Maltais v. United States, supra,* at 547. Indeed, the jurisdictional grant includes the power to adjudicate "any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff." 28 U.S.C. § 1346(c). Where, as here, the defendants have asserted crossclaims against each other, USA's liability cannot be determined in a single action unless the nonfederal defendants remain in the suit.

The *Aldinger* Court indicated in significant dictum that it might have reached a different result had a denial of pendent party jurisdiction left plaintiff with no recourse but to pursue her remedies in two forums.

When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together. *Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original). "We are not faced with a situation where 'the efficiency plaintiff seeks so avidly is available without question in the state courts.'" *Ortiz v. United States Government, supra,* at 72, quoting *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

Further, a salient feature of the FTCA is that "[T]he United States shall be liable . . . to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This language signals a Congressional intent to have the United States treated like any other party in tort suits. *Rayonier, Inc. v. United States,* 352 U.S. 315, 319–20, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957). A private party sued in tort would expect the plaintiff to join another party defendant if a common nucleus of operative facts subjected both defendants to potential liability. Congress could not have intended to restrict joinder of other defendants with the United States under the FTCA when Congress's purpose was to have the United States treated like any other defendant sued in tort. *Wood v. Standard Products Co., Inc.,* 456 F.Supp. 1098, 1104 (E.D.Va.1978). The

---

**14.** The Court in *Maltais v. United States,* 439 F.Supp. 540, 547 (N.D.N.Y.1977), declared that *Aldinger* supports the conclusion that pendent party jurisdiction "[does] not go against the

grain of interpretation worked into Article III of the Constitution."

**15.** *See supra* at note 3.

FTCA, then, does not negate the existence of pendent party jurisdiction in the case at bar.[16] *See Ortiz v. United States Government, supra,* at 73.

## DISCRETIONARY CONSIDERATIONS

The only question remaining as to the jurisdictional issue is whether this Court's judicial power *should* be exercised to adjudicate the nonfederal claims asserted by plaintiff in this action. Concurrent with its liberal interpretation of pendent jurisdiction, the *Gibbs* Court announced that federal courts have broad discretion to dismiss claims within their jurisdictional power. In the Court's view, discretion to dismiss state claims should generally be exercised (1) when considerations of judicial economy, convenience, and fairness to the litigants were not present; (2) when a surer-footed reading of the applicable law could be obtained in state courts; (3) when state issues were found substantially to predominate; or (4) when divergent state or federal theories of relief were likely to cause jury confusion. In particular, the Court indicated that dismissal of state claims would be mandatory when the federal claims were dismissed before trial. 383 U.S. at 726–27, 86 S.Ct. at 1139.

▐ We have decided in our discretion to exercise pendent party jurisdiction over the nonfederal defendants. Although state law governs most aspects of the case, federal law governs two crucial issues.[17] We have no reason to believe, then, that a surer-footed reading of the applicable law could be obtained in the state courts; nor is it evident that divergent theories of relief would cause confusion. The increase in efficiency, judicial economy, and fairness to the litigants resulting from a single trial leads us to conclude that on balance we should retain plaintiff's entire action. *Wood v. Standard Products Co., Inc.,* 456 F.Supp. 1098 (E.D.Va.1978). The Court's

discretionary exercise of pendent party jurisdiction is of course an issue which remains open throughout the litigation. *United Mine Workers v. Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

### II

We turn next to defendant USA's motion for summary judgment. USA contends that it is entitled to summary judgment as a matter of law upon facts that are not genuinely disputed. *Manetas v. Int'l Petroleum Carriers, Inc.,* 541 F.2d 408 (3rd Cir. 1978). Plaintiff, however, contends that USA's motion is premature since discovery has not been completed and since there may be several disputed issues of material fact. Plaintiff advances several arguments in support of his position. First, defendants Jenkins-Elek and Bilodeau may have been "employees" of the Government for whose conduct the Government would be liable. Second, even if Jenkins-Elek and Bilodeau were not Government employees, the Government was engaged in an inherently dangerous activity rendering it liable for the acts of its independent contractors. Third, the Government as owner of the property was under a nondelegable duty and is liable for the negligence of the independent contractor it employed. Fourth, the Government is liable for acts of its servants creating an unreasonable risk of harm to trespassers or licensees on the property. Fifth, the Government is liable for the negligence of the financially irresponsible contractor it employed.

We first consider the law to be applied in a case arising under the FTCA and then consider plaintiff's arguments in order.

### 1.

### APPLICABLE LAW

▐ In a suit against a private person or against the United States under the

---

**16.** In *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) the Supreme Court ruled that the history of the diversity statute, 28 U.S.C. § 1332(a)(1) "clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State

as any defendant." *Id.* at 374, 98 S.Ct. at 2403. No such intent has been evidenced respecting the FTCA.

**17.** These two issues are who is a federal "employee" and what is a "federal agency" within the meaning of the FTCA. *See infra* at 22.

FTCA, the law of the place where the tort occurred generally governs most aspects of the case. *Toole v. United States*, 588 F.2d 403 (3rd Cir. 1978). Federal law appears, however, to govern such questions as who is a federal "employee" and what is a "federal agency" in suits against the United States. 1 Jayson, *Handling Federal Tort Claims* § 201. *See United States v. Lapatourel*, 571 F.2d 405 (8th Cir. 1978), *modified*, 593 F.2d 827 (1979). As to the question who is a federal employee, the Supreme Court has on several occasions observed that the employment relationship between the Government and its employees "is distinctively federal in character" and is "governed exclusively by federal law." *E. g., Feres v. United States*, 340 U.S. 135, 143, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). As to the question what is a federal agency, the Supreme Court has not spoken, but here too federal law should govern. A federal enactment usually creates and regulates the department or agency involved; it would be illogical to look away from federal law and look to state law to determine what is a federal agency. 1 Jayson, *Handling Federal Tort Claims* § 201 at 8–6.[18] State law, then, governs the substantive issues raised by this motion except the questions who is a federal employee and what is a federal agency.

### 2.

### GOVERNMENT EMPLOYEE & AGENCY

Plaintiff contends that Jenkins-Elek and Bilodeau may have been employees of the Government for whose conduct the Government would be liable. Proper consideration of this issue requires an examination of the concepts employee and federal agency within the meaning of the FTCA.

 The FTCA provides judicial relief to those who suffer injury caused by the negligence of the United States Government's employees. *See generally* 28 U.S.C. § 2671 *et seq.* The Government is liable for the wrongs of its employees under the *respondeat superior* doctrine. *United States*

*v. Becker*, 378 F.2d 319, 321 (9th Cir. 1967). The Government therefore cannot be liable when there is no master-servant relationship between the United States and the alleged wrongdoer. *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

The FTCA defines the term "employee of the Government" to include (1) officers or employees of any federal agency; (2) members of the military or naval forces of the United States; and (3) persons acting on behalf of a federal agency in an official capacity. 28 U.S.C. § 2671.

 At the outset, the Court notes that the FTCA's definition of employee contemplates a much broader category than those who constitute the federal civil service or the military. The use of the word "includes" in the definition suggests that persons not clearly within the scope of these three categories may nonetheless be covered by the term. 1 Jayson, *Handling Federal Tort Claims* § 203 at 8–48. Indeed, older cases held employees of private firms acting as managers of public housing projects to be employees of the Government for purposes of the FTCA. *State of Maryland v. Manor Real Estate & Trust Co.*, 176 F.2d 414 (4th Cir. 1949). *Schetter v. Housing Authority of the City of Erie*, 132 F.Supp. 149 (W.D.Pa.1955). Recent decisions, however, signal a more restrictive reading of the term employee. Under this view, managers of Government-owned property are not employees of the Government when the Government does not have control over day to day operations. *Perez v. United States*, 444 F.Supp. 623 (D.P.R.1978), *aff'd.*, 594 F.2d 280 (1st Cir. 1979). *Harris v. United States*, 424 F.Supp. 627 (D.Mass.1976).

The definition of federal employee includes employees of and persons acting for a federal agency. The definition of federal agency thus becomes crucial when a wrongdoer's employment by an agency is manifest but the agency's characterization as a federal agency is questionable. The FTCA

---

**18.** Where there is no federal law on a particular point, courts may look to state law for guidance. *Cf.* 1 Jayson, *Handling Federal Tort Claims* § 201 at 8–6.

defines "federal agency" to include (1) the executive departments; (2) the military departments; (3) the independent establishments of the United States; and (4) corporations acting primarily as instrumentalities or agencies of the United States; the definition excludes contractors with the United States. 28 U.S.C. § 2671.

■ The FTCA, then, retains the traditional tort principle—that an independent contractor is responsible for both his torts and for those of his servants; yet the one engaging the contractor to perform the services is not responsible.[19] 1 Jayson, Handling Federal Tort Claims § 202.01 at 8–11. Consistent with this principle courts have long held that the Government is not liable for the torts of its independent contractors. E. g., United States v. Orleans, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). Logue v. United States, supra.

Properly viewed, the question becomes whether an independent contractual relationship or some other relationship existed between USA and Jenkins-Elek and Bilodeau. As to this question, courts once held managing agents of public housing projects to be not independent contractors but instead instrumentalities of the United States for whose torts the Government would be liable. Schetter v. Housing Authority of the City of Erie, supra. Toth v. United States, 107 F.Supp. 37, 38 (N.D.Ohio 1952). See State of Maryland v. Manor Real Estate & Trust Co., supra. More recent decisions, however, have reached the opposite result. These cases hold local housing agencies and private companies managing Government owned property to be independent contractors and not agencies of the United States. Perez v. United States, supra. Harris v. United States, supra.

Recent Supreme Court and Third Circuit pronouncements accord with the modern view restricting the terms employee and federal agency. See United States v. Orle-

ans, supra. Gibson v. United States, 567 F.2d 1237 (3rd Cir. 1977), cert. denied, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). In United States v. Orleans, supra, plaintiff had been injured while a passenger in a car driven by an employee of an agency organized under the Economic Opportunity Act of 1964. 42 U.S.C. § 2941. The Supreme Court held that an agency organized for the sole purpose of undertaking federal programs, funded entirely by the federal Government, and all of whose activities complied with Government regulations, is not a federal instrumentality or agency; nor are its employees federal employees within the meaning of the FTCA. In reaching this conclusion, the Court explained that the question whether an agency is a federal agency or whether its employees are federal employees turns on the Government's power to exercise detailed control over their daily operations.

■ In the wake of Orleans, the Third Circuit decided Gibson v. United States, supra. There plaintiff brought suit for injuries sustained at a federal Job Corps Center. The Center was operated by the Federal Electric Company [hereinafter "FEC"] under contract with the Office of Economic Opportunity [hereinafter "OEO"], an agency of the United States. The OEO exercised broad supervisory power over the Center's operations and placed a permanent representative at the Center. The Court nonetheless held the Government not liable for injuries plaintiff had sustained. Liability could not be imposed on the theory of respondeat superior since the Government exercised no day to day control over the Center or FEC's employees. The FEC was not an agent of the United States since broad supervisory control or even the potential to exercise detailed control could not convert an independent contractor into an agent.[20]

19. For a discussion of several exceptions to this general rule see infra at 28–31.

20. In addition to examining the Government's control over an individual or organization, a court should also consider characteristics of

the master-servant relationship at common law in determining whether a wrongdoer is an "employee" of the Government. These characteristics include: whether one employed is in a distinct occupation or business; the nature of that occupation; the skill the operation re-

*Orleans* and *Gibbs* taken together teach us that managers of government-owned property are not federal agencies and their employees are not federal employees within the meaning of the FTCA unless the Government itself exercises direct day to day control over their operations. In the case at bar, then, USA can be liable for the negligent acts of Jenkins-Elek or Bilodeau only if it exercises direct day to day control over their operations.

With these considerations in mind, the Court is not satisfied that USA is entitled to summary judgment as a matter of law on the question whether it is liable for the acts of its employees. Plaintiff, not having completed discovery, should be afforded the opportunity to demonstrate the facts upon which its case must rest.

Summary judgment may properly be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ely v. Hall's Motor Trans. Co.*, 590 F.2d 62, 66 (3rd Cir. 1978). In construing this Rule, the Third Circuit has repeatedly explained that summary judgment is never warranted except on a clear showing that there is no genuine issue as to any material fact. *E. g., id.* and cases cited therein. The existence of disputed issues should be ascertained by resolving "all inferences, doubts, and issues of credibility against the moving party." *Id.*

Discovery in this case has not been completed. Much of the information plaintiff needs to defeat USA's motion for summary judgment is within the possession and knowledge of the defendants. Plaintiff contends that there may indeed be several disputed issues of material fact and that he does not have access to the information necessary to support this contention. "To grant a motion for summary judgment under such circumstances would be patently unfair." *Kinee v. Abraham Lincoln Federal Savings & Loan Association*, 365 F.Supp. 975, 981 (E.D.Pa.1973). *See Tobelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016 (3rd Cir. 1942). When discovery is complete USA may be entitled to summary judgment; but consideration of this issue will necessarily have to be postponed until that time.

3.

INHERENTLY DANGEROUS ACTIVITY

Plaintiff next contends that even if Jenkins-Elek and Bilodeau are independent contractors, USA is still liable for their acts undertaken while engaged in an inherently dangerous activity. This contention is totally devoid of merit.

No action can lie against USA based upon the theory of strict liability without fault. 1 Jayson, *Handling Federal Tort Claims* § 214.05 at 9–110. The FTCA imposes liability only when there has been a "negligent or wrongful act or omission" of a federal employee. 28 U.S.C. § 1346(b). The inherently dangerous activity doctrine, however, imposes liability not because an employee has committed negligence or a wrongful act, but because the activity involved in is one which, despite the exercise of all due care, poses a likelihood of injury. 1 Jayson, *Handling Federal Tort Claims* § 214.05 at 9–111.[21] The Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952), and *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32

quired; who supplies the tools, equipment, and the place of work for the worker; the length of time for which the worker is employed; whether the worker is paid by the time or by the job; and whether the parties believe they are creating a master-servant relationship. 1 Jayson, *Handling Federal Tort Claims* § 203.01 at 8–49.

21. 1 Jayson, *Handling Federal Tort Claims* § 214.05 at 9–110 n. 14, treats the doctrine of strict liability as follows:

The essence of the doctrine of strict liability is set out in *Restatement of Torts* § 519: " * * * one who carries on an ultrahazardous activity is liable to another whose person, land, or chattels the actors should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

L.Ed.2d 499 (1972), and the Third Circuit in *Gibson v. United States, supra,* at 1237, proclaimed that state law to the contrary notwithstanding the FTCA does not authorize the imposition upon the Government of strict liability of any sort.

*Dalehite, Nelms,* and *Gibson,* then, establish that USA cannot be held liable for either the nonnegligent or the negligent acts of Jenkins-Elek and Bilodeau if they are deemed independent contractors and not employees of USA. USA's motion for summary judgment is therefore granted with respect to plaintiff's contention that USA is liable under the "inherently dangerous activity" doctrine.[22]

### 4.

### NONDELEGABLE DUTY

Plaintiff also contends that USA as owner of the property is under a nondelegable duty[23] and is therefore liable for the negligence of its independent contractors. This contention too lacks merit.

Assuming *arguendo* that state law recognizes the doctrine of nondelegable duty, the doctrine cannot impose liability on the Government under the FTCA. Two insurmountable barriers to liability are manifest. First, the doctrine is predicated on strict liability for which the FTCA will not support a claim.[24] Second, the doctrine

imposes liability on the basis of an independent contractor's negligence; liability on this basis is excluded by the FTCA. See 28 U.S.C. § 2671.[25] USA's motion for summary judgment is therefore granted respecting plaintiff's contention that USA is liable under the nondelegable duty doctrine.

### 5.

### TRESPASSER

Plaintiff further contends that USA is liable for the acts of its servants creating an unreasonable risk of harm to plaintiff, a licensee on the property. USA suggests, however, that plaintiff, a trespasser, has produced no proof either that USA created the artificial condition on USA's land or that USA had knowledge of the artificial condition. In USA's view, then, there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law.[26]

The Court is not convinced that summary judgment is appropriate at this time. As noted above, discovery is not complete. Plaintiff alleges the existence of several disputed issues of material fact—for example, whether plaintiff was a licensee or a trespasser; whether USA, its employees, or its independent contractor created the condition causing plaintiff's injury; and whether USA or its employees had knowl-

---

**22.** The "inherently dangerous activity" doctrine is subject to two different analytical interpretations. First, the doctrine may be viewed as having no relationship to the *respondeat superior* doctrine—to which liability under the FTCA is limited. Under this analysis, liability for "inherently dangerous activity" is imposed not because an employee has been negligent but because the activity involved is one which, despite the exercise of all due care, poses 'a likelihood of injury. Second, the doctrine may be viewed as stating a theory of vicarious liability—making the employer liable for the negligence of an independent contractor. *Gibson v. United States,* 567 F.2d 1237 (3rd Cir. 1977). Put thus, liability imposed is a form of *respondeat superior* liability, imposed upon a contractee as a result of the negligence of its independent contractor. Under either view, the doctrine cannot be used to impose liability upon the Government under the FTCA. *See Gibson v. United States, supra.*

**23.** An employer is generally not liable for the negligence of his independent contractor. In a variety of situations, however, a duty imposed on the employer is such that it cannot be delegated to the contractor. The employer cannot in these situations rely upon the contractor even when the employer is not negligent. 1 Jayson, *Handling Federal Tort Claims* § 214.-02[5] at 9–75.

**24.** See "Inherently Dangerous Activity," *supra* at 1092–1093.

**25.** See "Inherently Dangerous Activity," *supra* at 1092–1093

**26.** USA relies upon *Simmel v. N. J. Coop Co.,* 28 N.J. 1, 143 A.2d 521 (1958), and *Caliguire v. City of Union City,* 104 N.J.Super. 210, 249 A.2d 603 (App.Div.1967), *aff'd. o. b.* 53 N.J. 182, 249 A.2d 577 (1969).

edge of such condition. Until discovery is complete, plaintiff lacks the information necessary to support his contentions. "To grant a motion for summary judgment under these circumstances would be patently unfair." *Kinee v. Abraham Lincoln Federal Savings & Loan Association, supra. See Tobelman v. Missouri-Kansas Pipe Line Co., supra.* USA may be entitled to summary judgment when discovery is complete; but consideration of this issue will necessarily have to be postponed until that time.

### 6.

### FINANCIALLY IRRESPONSIBLE CONTRACTOR

Plaintiff finally suggests that USA is liable for the negligence of Jenkins-Elek and Bilodeau since they are not insured and thus are financially irresponsible. Plaintiff relies upon *Majestic Realty Associates, Inc. v. Totti Contracting Co.,* 30 N.J. 425, 153 A.2d 321 (1959). There the Court suggested without deciding that "a loss arising out of the tortious conduct of a financially irresponsible contractor should fall on the contractee." *Id.* at 432, 153 A.2d at 325.

At this juncture the Court expresses no opinion as to the merits of plaintiff's contention since the issue arises only after liability has first been established.

> Financial responsibility has nothing to do with legal liability of the contractor. The fact of capacity to respond in damages, of course, would be immaterial on the issue of his negligence in causing a plaintiff's injury . . . [I]n the usual tort action against the [contractee], liability would not come into existence unless negligence of the contractor was established.

*Id.* at 433, 153 A.2d at 325. Suffice it to say, however, that plaintiff has not brought to the Court's attention any case directly holding a contractee responsible for the torts of a contractor under this theory.[27]

**27.** Plaintiff's brief, at 10, suggests that USA is liable for harm caused by Jenkins-Elek in negligently failing to supervise the maintenance of the property. If plaintiff wishes to raise this argument, he should at the appropriate time brief the issue in detail. At present, however, the Court expresses no opinion as to the merits of this contention.