Michael GRODJESKI, Plaintiff,

v.

The TOWNSHIP OF PLAINSBORO, a municipal corporation of the State of New Jersey, The Plainsboro Township Police Department, Clifford Maurer, Gary R. Coderoni, Larry Runge, J. Rosiak and others individually and officially in their respective capacities as officers of the Plainsboro Township Police Department, The Trenton Times, a Delaware Corporation, Allbritton Communications Co. and Joseph Allbritton, W. Dean Singleton, Walter Herring and Kurt Heine, individually and in their official respective capacities as owners, president, managing editor and reporter for the Trenton Times, The Capitol City Publishing Co., Inc., a New Jersey Corporation doing business as The Trentonian, Ralph Ingersoll, Edward Hoffman, Emil Slaboda, Robert Zera and Ed Leefeldt, individually and in their official respective capacities as owner, publisher, editor, managing editor and reporter for The Trentonian, The Princeton Packet, a Delaware Corporation, The Princeton Packet, Inc., James Kilgore, Richard Willever and James Greiff, individually and in their official respective capacities as publisher, owner, executive editor and reporter for the Princeton Packet, The Associated Newspaper Carriers of New Jersey, a New Jersey Corporation doing business as The Associated Press, Michael Bezdek and Thomas Slaughter, individually and in their official respective capacities as editor and chief of bureau for the Associated Press, and John Coe, Mary Doe and Stephen Roe, 1–20, and other individuals as yet unknown, names being fictitious, individually and as agents, servants and employees of the Trenton Times, The Trentonian, The Princeton Packet and The Associated Press, Defendants.

Civ. No. 83–664.

United States District Court,
D. New Jersey.

June 16, 1983.

Alan G. Kelley, Greenberg, Kelley & Prior, Trenton, N.J., for plaintiff.

Edward R. Hannaman, Stonaker & Stonaker, Princeton, N.J., for defendants The Township of Plainsboro—including its Township Police Department—punitive damages only.

John S. Fitzpatrick, Haggerty & Donohue, Union, N.J., for defendants The Township of Plainsboro—including its Township Police Department and individual officers Mauer, Coderoni, Runge and Rosiak—compensatory damages only.

Dennis S. Brotman, Brotman & Felsenfeld, Trenton, N.J., for defendant Mauer, individually.

Daniel G. Graziano, Stockman, Mancino, Smithson, O'Donnell, Sypek, Trenton, N.J., for defendant Coderoni, individually.

E. John Wherry, Wherry & Yostembski, Trenton, N.J., for defendant Runge, individually.

R. Douglas Hoffman, Piepszak & Hoffman, Trenton, N.J., for defendant Rosiak, individually.

Douglas G. Sanborn, Jamieson, McCardell, Moore, Peskin & Spicer, Trenton, N.J., for defendant The Trenton Times.

Gerald A. Hughes, Lawrenceville, N.J., for defendant The Trentonian.

Gerard H. Hanson, Brener, Wallack & Hill, Princeton, N.J., for defendant The Princeton Packet.

Thomas J. Cafferty, Seiffert, Frisch, McGimpsey & Cafferty, North Brunswick, N.J., for defendant Associated Press.

## OPINION

ANNE E. THOMPSON, District Judge.

This lawsuit arose out of plaintiff Michael Grodjeski's arrest in February 1982 for allegedly making harassing telephone calls and otherwise acting as a "Peeping Tom" in a series of incidents. Plaintiff claims that a number of police officials ["police defendants"] wrongfully assaulted, arrested, and searched him. Grodjeski also asserts that the police defendants and a variety of news organizations reporting the events ["media defendants"] libeled him.

The precise nature of the causes of action asserted and their jurisdictional predicates is not clear from the face of the complaint. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343(3). Claims against the police defendants stemming from the arrest, alleged beating and improper search fall within 42 U.S.C. § 1983. Although a libel claim is asserted against the police defendants under state law, plaintiff contends in his brief in opposition to this motion that a "fair" reading of the complaint indicates that a § 1983 claim has been asserted based upon the libel charges because plaintiff has been deprived of his ability to make a living as an attorney as a result of the defamation. The significance of this proposed interpretation of the complaint is that plaintiff seeks to pend his claims against the media defendants to the libel claim against the police officials. Since Grodjeski is attempting to invoke this court's pendent party jurisdiction over the media defendants for his libel claims against them, as will be discussed shortly, there must be a substantial federal claim to which the libel claims are pended. The issue presented by the instant motion by the media defendants to dismiss the claims against them for lack of subject matter jurisdiction is whether the doctrine of pendent jurisdiction may be extended to confer jurisdiction over these non-federal defendants as to whom no independent basis for jurisdiction exists in an action based upon § 1983. If so, the court must decide if it will exercise its discretion to invoke pendent jurisdiction.

■■ It is a fundamental precept of our judicial system that the federal courts are courts of limited jurisdiction. In determining whether this court has jurisdiction over the claims against the media defendants, the court must undertake a three-tiered analysis. First, it must determine whether it has the Article III *power* to exercise jurisdiction over the claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Second, it must determine whether Congress in the statutes conferring jurisdiction has not expressly or by implication negated the exist-

ence of jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). Third, it must decide whether as a matter of discretion the power should be exercised. *Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. These issues will be addressed *seriatim*.

## A. *Article III Considerations*

■ In order to have the power to adjudicate the claims in question, the federal claim to which plaintiff seeks to pend his state claims must be substantial. In addition, the state and federal claims must derive from "a common nucleus of operative fact" such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. at 1138.

The libel claims against the media defendants do not derive from a common nucleus of operative fact with plaintiff's § 1983 claims against the police defendants for assault, improper arrest and unlawful search. The complaint is not clear as to the nexus between the libel claims against the two sets of defendants. It would appear, however, that plaintiff is contending that the media defendants received the information from the police defendants and libeled him in publishing that information. The two sets of libel claims would appear to arise out of the same operative facts and it would not be unreasonable to expect that the claims would be tried in one forum.

The parties dispute whether the libel claims against the police defendants constitute a substantial federal question. Plaintiff has not stated explicitly in his complaint that a § 1983 claim exists against the police defendants for libel. Although not specifically set forth as a federal claim, it would appear that the allegations *may* set forth a viable claim under that statute.

■ To state a cause of action under § 1983, plaintiff must allege conduct under color of state law depriving him of a right, privilege or immunity secured by the Constitution or laws of the United States. Reputation alone does not constitute the liberty or property considerations sufficient

to trigger due process rights under the Fifth and Fourteenth Amendments. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

A cognizable liberty interest appears only when an individual's reputation is stigmatized in connection with the denial of a particular constitutional guarantee or a more tangible interest. *Id.* at 700–01, 96 S.Ct. at 1160. New Jersey does not recognize reputation as a constitutionally protectible interest. *See Maressa v. New Jersey Monthly*, 89 N.J. 176, 445 A.2d 376 (1982). Even if New Jersey recognized a property interest in goodwill of a business, as plaintiff claims, plaintiff has not set forth a claim for loss of goodwill. There is no existing private practice with goodwill to lose.

■ Plaintiff's claim of loss of employment as an attorney presents a closer issue. In *Paul*, the Court rejected plaintiff's assertion that loss of future employment opportunities resulted in a constitutional deprivation. In the present case, as in *Paul*, there has been no change in plaintiff's status. *Cf. Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). There is no statement in the complaint that plaintiff was fired from his public employment as a result of the alleged defamation by the police officials. The ability to engage in one's livelihood, if completely foreclosed by the state's action in libeling a person, may rise to the level of a constitutionally protected interest. While plaintiff's reputation alone may not be constitutionally cognizable in New Jersey, it would appear that the ability to engage in one's livelihood is. The court need not resolve this constitutional issue, however, both because the complaint does not make the allegations with the requisite specificity and, as discussed *infra*, the court has concluded that Congress has negated the existence of jurisdiction in this matter.

B. *Jurisdictional Grants*

■ Prior to *Aldinger, supra*, the United States Court of Appeals for the Third Circuit extended the scope of pendent jurisdiction to pendent party cases. *See, e.g., Curtis v. Everette*, 489 F.2d 516 (3d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir.1971). In *Aldinger*, however, the Supreme Court rejected the application of pendent party jurisdiction when asserted against a municipal corporation in an action brought pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. In determining that Congress had by implication negated the existence of jurisdiction over such a claim, the Court noted that under the then-current interpretation of § 1983 neither substantive liability under that section nor federal jurisdiction under its jurisdictional counterpart extended to municipal corporations. The Court concluded, therefore, that allowing the plaintiff to sue the municipality in federal court on the related state claim would violate the intent of Congress. 427 U.S. at 17, 96 S.Ct. at 2421. The Court stated:

> Parties such as counties, whom Congress *excluded* from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3), can argue with a great deal of force that the scope of that "civil action" over which the district courts have been given statutory jurisdiction should not be so broadly read as to bring them *back* within that power merely because the facts also give rise to an ordinary civil action against them under state law. In short, as against a plaintiff's claim of *additional* power over a "pendent party," the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress.

*Id.* at 17, 96 S.Ct. at 2421 (emphasis in original). The *Aldinger* analysis of pendent party jurisdiction was reaffirmed in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Recent Third Circuit opinions have suggested a narrower interpretation

of pendent party jurisdiction in this circuit in the wake of *Aldinger* and *Owen.* *See cases cited in Cheltenham Supply Corp. v. Consol. Rail Corp.*, 541 F.Supp. 1103, 1106 (E.D.Pa.1982).

The congressional negation test set forth in *Aldinger* is not easily applied, in part because of the absence of contours to the test. As Justice Brennan noted in his dissent in *Aldinger,* congressional silence alone should not be considered sufficient for a determination of implied negation since "all instances of asserted pendent-party jurisdiction will by definition involve a party as to whom Congress has impliedly 'addressed itself' by not expressly conferring subject-matter jurisdiction on the federal courts." 427 U.S. at 23, 96 S.Ct. at 2424. *See also Cheltenham, supra,* at 1106 n. 5. The tautological implications of the implied negation test in *Aldinger* notwithstanding, there appear to be sufficient indicia of congressional intent to exclude the claims in question.

At the outset, it should be noted that the holding of *Aldinger* itself may directly preclude the pendent party claims in this case. Although the specific holding of *Aldinger* concerned municipalities in the § 1983 context, 427 U.S. at 17 & n. 12, 96 S.Ct. at 2422 & n. 12, the Court did state more broadly that it decided "... the issue of so-called 'pendent party' jurisdiction with respect to a claim brought under §§ 1343(3) and 1983." *Id.* at 17–18 & n. 12, 96 S.Ct. at 2421–2422 & n. 12. The Court then stated that other statutory grants and alignments of parties and claims might call for a different result. *Id.* at 18, 96 S.Ct. at 2422.

Indeed, it would appear that the Third Circuit has interpreted *Aldinger's* holding broadly. In *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977), the Court noted that *Aldinger* cast "grave doubts" as to whether the doctrine of ancillary jurisdiction could be extended to situations in which there was no independent basis for subject matter jurisdiction over a party. *Id.* at 886–87. The Court then stated that it recognized that *Aldinger* involved pendent jurisdiction and "could be construed as be-

ing limited to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) contexts." *Id.* at 887. A number of other courts have remarked upon the absence of pendent party jurisdiction in the § 1983 context. *See, e.g., Fed. Deposit Ins. Corp. v. Otero*, 598 F.2d 627, 631 (1st Cir.1979); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir.1977); *Morse Electro Products Corp. v. S.S. Great Peace*, 437 F.Supp. 474, 485 (D.N.J. 1977); *Hupart v. Bd. of Higher Educ. of City of New York*, 420 F.Supp. 1087, 1104 (S.D.N.Y.1976).

Construing the scope of jurisdiction in light of the cause of action, as mandated by *Aldinger,* it is noteworthy that Congress has specifically and narrowly defined those parties and those claims against whom actions could be brought. Just as pendent party jurisdiction was not extended to an entity other than a "party" in *Aldinger,* Congress has limited the scope of § 1983 to actions taken under color of state law. Thus, it would appear that Congress did not intend that parties not acting under color of state law be sued in federal court for their private actions. *Watkins v. Roche*, 529 F.Supp. 327, 332–33 (S.D.Ga. 1981).

■ Moreover, it is significant that concurrent jurisdiction exists in the state courts to hear these claims. This is not a situation such as that in *Dumansky v. United States*, 486 F.Supp. 1078 (D.N.J. 1980), in which the statute conferred exclusive jurisdiction in the federal courts over the federal claim. This court noted in *Dumansky* that the Court in *Aldinger* indicated that it might have reached a different result had a denial of pendent party jurisdiction left plaintiff with no recourse but to pursue his remedies in two forums. *Id.* at 1088. Thus, this is not a situation in which *"only* in a federal court may all of the claims be tried together." *Aldinger, supra,* 437 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original, footnote omitted). Finally, it is noteworthy that it is plaintiff, rather than the defendants, who seeks to extend the boundaries of this court's jurisdiction. As *Owen* demonstrates, courts construe the jurisdictional statute strictly

72

against the party who chooses to confront it. 437 U.S. at 376, 98 S.Ct. at 2403. *See generally* Note, *A Closer Look at Pendent And Ancillary Jurisdiction: Toward A Theory of Incidental Jurisdiction,* 95 Harv.L.Rev. 1935, 1940, 1943–45 (1982). This court, therefore, lacks jurisdiction to entertain the pendent party claims.

### C. *Discretionary Considerations*

 Even if the court did have the Article III power and the jurisdiction to hear the pendent party claims, it would exercise its discretion not to do so. In exercising its discretion, this court must consider judicial economy, convenience, fairness to the parties and comity. *Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir.1981), *citing Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

If all the claims are tried together, the media defendants would be subject to a suit involving numerous issues with which they have no connection. A number of claims concern the events surrounding plaintiff's arrest and alleged assault. The media defendants could be significantly prejudiced by any determination of impropriety on the part of the police defendants. In addition, although related, the libel claims against the two sets of defendants would involve different facts and different standards of liability with the attendant possibility of confusion and prejudice. It is also noteworthy that it appears that the law governing an award of punitive damages is unsettled in New Jersey. Notions of comity suggest that this issue be addressed first by the state courts. Although it may be more convenient for plaintiff to try his entire case in the federal forum, the efficiency which plaintiff seeks is equally available in the state courts.

For these reasons, the motions of the media defendants to dismiss the claims against them for lack of subject matter jurisdiction will be granted. The court will enter an appropriate order.