Caster WOOD

v.

STANDARD PRODUCTS COMPANY,
INC.

Civ. A. No. 77–0338–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 19, 1978.

Alan W. Clarke, Clarke & Johnston, Lively, Va., James A. Eichner, Richmond, Va., for plaintiff.

John M. Ryan, Norfolk, Va., Elliott Norman, Asst. U. S. Atty., Richmond, Va., Thomas J. Harlan, Jr., Norfolk, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

In this action by Caster Wood, a fisherman, against defendant Standard Products Company, Inc., shipowner, and defendant United States of America, Wood amended his complaint to add Dr. Robert E. Beatley as a party. Dr. Beatley is the physician who treated Wood for fish slime infection and it is the alleged deficiency in that treatment which is central to this action.

Wood, while working as a fisherman in the Chesapeake Bay for defendant employer Standard Products, incurred an infection in the middle finger of his left hand. The infection was treated by Dr. Beatley, a private physician in Northumberland County, Virginia. The treatment was performed under contract between Dr. Beatley and the U. S. Public Health Service. After continued treatment by Dr. Beatley the condition worsened and plaintiff went for further treatment to a hospital where plaintiff's left hand and part of his forearm were amputated. Plaintiff alleges that his loss was due to defendant Beatley's negligent treatment of the fish slime infection. Thus against Dr. Beatley plaintiff states a State tort law claim for medical malpractice.

Because there is no diversity of citizenship between Wood and Dr. Beatley, defendant Beatley moves that he be dismissed as a party for lack of jurisdiction in this Court. Plaintiff claims that this Court may exercise jurisdiction over Dr. Beatley on the basis of either a theory of pendent party jurisdiction or on an agency theory.

### I

■ Whether Dr. Beatley is an agent of either defendant Standard Products or defendant United States is irrelevant to the question of this Court's jurisdiction over him. Being the principal's agent does not, in and of itself, make the agent liable as a party. If tortious conduct is committed by the agent, he is responsible for it as an independent party, not as the agent of the principal. 3 Am.Jur.2d Agency § 300. That Dr. Beatley may or may not be an agent of either of the other two defendants will not independently bring Dr. Beatley in as a party subject to the jurisdiction of the Court. The requirement of diversity is not waived merely because of the existence of an agency. Plaintiff's authorities in support of his position on agency all deal with jurisdiction over the shipowner for acts of his agents. The agency theory being disposed of, the question remains whether the Court may exercise pendent party jurisdiction over Dr. Beatley.

### II

The complaint, as presently amended, in addition to the malpractice claim against Dr. Beatley, states three (3) other causes of action. There is a Jones Act claim, 46 U.S.C. § 688, and a general maritime tort law claim, 28 U.S.C. § 1333, against the defendant shipowner Standard Products and there is a Federal Tort Claims Act, 28 U.S.C. § 2674, cause of action against the United States.

By order of this Court dated 8 March 1978 the question of whether the United States is liable as principal for the alleged malpractice of Dr. Beatley has been separated from the rest of the case. Thus there will be a bifurcated proceeding with the

liability of defendant Standard Products determined first and the claim against the United States under the Federal Tort Claims Act considered separately.

Despite this bifurcated trial proceeding, the Court has before it the Federal Tort Claims Act cause of action against the United States as well as the general maritime claim and the Jones Act claim against defendant employer Standard Products. This Court can exercise jurisdiction over the State law claim against Dr. Beatley only if it be considered pendent to at least one of the three (3) claims against the other defendants.

█ In determining whether there is pendent jurisdiction over an additional party, *Aldinger v. Howard,* 427 U.S. 1, 17, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976) instructs the district court to pay "careful attention to the relevant statutory language." With respect to the Jones Act, 46 U.S.C. § 688, the statutory language itself does not give much guidance to congressional intent.[1] But case law clearly limits the action to one against the shipowner or the ship. *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 787, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); *Hanlon v. Waterman Steamship Corp.,* 265 F.2d 206, 207, (2nd Cir. 1959). This limitation on who may be sued under the Jones Act is at least as explicit as the supposed congressional limitation in 42 U.S.C. § 1983 claims against counties recognized in *Aldinger* yet abandoned two (2) years later in *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This Court holds, then, that the Jones Act does not lend itself to a finding of Congressional permission to assert state law claims against non-diverse defendants as pendent parties.

### III

█ Plaintiff also asserts a claim under general maritime law. It is specifically alleged that the boat on which plaintiff suffered his injury was unseaworthy in that proper gloves or other safety devices were not supplied to prevent the type of injury suffered by the plaintiff. This claim of injury to the plaintiff caused by the unseaworthiness of defendant Standard Products' boat is a maritime tort fully cognizable by this Court under its general maritime jurisdiction, 28 U.S.C. § 1333. *Victory Carriers v. Law,* 404 U.S. 204, 205–206, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), *reh. den.* 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753 (1972). There is no bar to the joinder of a Jones Act claim with one under general maritime law and the general maritime law claim is not subsumed in the Jones Act claim. *Sea-Land Services v. Gaudet,* 414 U.S. 573, 589, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). Thus, the Court must consider the question of whether the federal maritime claim can support the jurisdiction of this Court over Dr. Beatley.

█ It is clear that if the anchor claim on which pendent jurisdiction is asserted is based on diversity, a federal district court may not reach out and assert jurisdiction over an additional party in order to adjudicate a pendent State claim where there is no diversity as to the additional party. It does not matter that there is a common nucleus of operative facts or that judicial economy might be served. *Owen Equipment & Erection Co. v. Kroger,* —— U.S. ——, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). *Parker v. W.W. Moore & Sons, Inc.,* 528 F.2d 764 (4th Cir. 1975).

But when the anchor claim is one grounded in federal law, as the general maritime claim is here, then it is not *Owen* and *Parker* to which this Court must pay primary attention, but *Aldinger.* *Aldinger,* specifically dealing with pendent party jurisdiction based upon a federal question, a 42 U.S.C. § 1983 claim, provides the frame-

---

1. The pertinent part of 46 U.S.C. § 688 reads as follows:

 "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principle office is located."

work for analysis for this pendant party jurisdictional question.

After directing the district courts to the relevant statutory language, *Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422, tells us that:

> [O]ther statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together.

*Aldinger,* 427 U.S. at 15, 96 S.Ct. 2413 also quotes with approval the language from *Kenrose Manufacturing Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (4th Cir. 1972) that where efficiency can be achieved by bringing the entire action in State court, the argument of increasing judicial efficiency by hearing the entire action in federal court is essentially hollow.

██ The Supreme Court has told us that pendant jurisdiction over an additional non-diverse party may not be predicated upon an anchor claim based on diversity of citizenship. Where the anchor claim is based on a federal question, then congressional intent as reflected in the relevant statutory language permitting, judicial economy and efficiency may lead the federal trial court to exercise jurisdiction over a non-diverse pendant party against whom only a State law claim is asserted. Where judicial economy and efficiency can be just as easily achieved in the State courts there is no need to assert pendant party jurisdiction.

Before attempting to apply the test above outlined, it will be helpful to canvass opinions from the various courts of appeals to see what guidance they give in applying the test. The only post-*Aldinger* case that has come to this Court's attention is *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977). *Ayala,* a Federal Tort Claims Act case, has continued the line of Ninth Circuit cases rejecting pendant party jurisdiction across the board. The Court states that the

Supreme Court's dictum in *Aldinger* concerning the desirability of pendant party jurisdiction when the jurisdictional basis is the Federal Tort Claims Act is not binding and that it will continue to reject such pendant party jurisdiction under its own precedents, *Williams v. United States,* 405 F.2d 951 (9th Cir. 1969) and *Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969), until they are expressly overruled by the Supreme Court. *Ayala, supra* at 1200. Relying on precedent, *Ayala* does not analyze the question of pendant party jurisdiction in the *Aldinger* framework.

Both the First and Fifth circuits have expressly approved the exercise of pendant party jurisdiction over an additional non-diverse party where the anchor claim is a federal one and complete relief can only be had in federal court. In *Bowers v. Moreno,* 520 F.2d 843 (1st Cir. 1975) the court was held to have pendant party jurisdiction over the employer trustees of a trust fund pendant to the court's jurisdiction over the union trustees by virtue of 29 U.S.C. § 501. Complete relief could only be had by joining all the trustees of the fund in this L.M.R.D.A. action. The Court commented that if the doctrine of pendant party jurisdiction did not exist the facts of that case would have made it necessary for such a doctrine to be invented. *Bowers,* 520 F.2d at 848.

In *Florida East Coast Railway Co. v. United States,* 519 F.2d 1184 (5th Cir. 1975) the railroad's State tort law claims against a contractor and a flood control district, non-diverse parties, were heard by the federal court pendant to the railroad's action under the Federal Tort Claims Act against the United States. The Court held that convenience, economy and fairness would thereby be served and that the federal court was the only available forum for hearing the entire dispute.

Indeed, circuit courts in pre-*Aldinger* and pre-*Owen* decisions have upheld pendant party jurisdiction in less compelling circumstances. In *Connecticut General Life Ins. Co. v. Craton,* 405 F.2d 41 (5th Cir. 1968) the union and individual union members were suing an employer pursuant to 29 U.S.C.

§ 185, which gives federal courts jurisdiction to hear employer-union contract disputes. The Fifth Circuit upheld pendant party jurisdiction over the non-diverse insurance carrier since the suit was for the purpose of determining rights to insurance coverage arising out of the collective bargaining agreement. Jurisdiction was upheld despite the fact that the union and the individual members could have gone into State court for complete adjudication of the entire dispute. The Third Circuit, in *Curtis v. Everette*, 489 F.2d 516 (3rd Cir. 1973), *cert. den.* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) also allowed pendant party jurisdiction where the State claim arose from the same facts as the federal claim even though it was a question of appending a State tort law claim to federal statutory and constitutional law claims, all of which could have been adjudicated in the State courts. *See also Stone v. Stone*, 405 F.2d 94 (4th Cir. 1968). Though these cases do not speak directly to the question at hand, they do indicate the clear direction in which the law has been moving. Their vitality where the anchor case was based on diversity is, of course, weak after *Owen Equipment & Erection Co. v. Kroger*, —— U.S. ——, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

More nearly related to the instant question, is *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2nd Cir. 1971). Judge Friendly was asked to hold that a maritime contract claim in admiralty against the ship and carrier would support pendant party jurisdiction over the pier operator when the plaintiff's claim against the pier operator sounded in State tort law. Because the same facts were controlling in regard to all the claims and because "pleadings in admiralty have traditionally been read with liberality," *Leather's Best*, 451 F.2d at 808, pendant party jurisdiction was upheld.

Despite the line of contrary appellant opinions in the Ninth Circuit, the federal district court in that circuit upheld the exercise of pendant party jurisdiction where the anchor case was an admiralty claim because of the closely related issues and the fact that it was not a case of essentially separate actions by separate plaintiffs which, according to the district court, so troubled the Ninth Circuit in *Hymer*. *Princess Cruises Corporation v. Bayly, Martin and Fay, Inc.*, 373 F.Supp. 762 (N.D.Cal. 1974).

The trend that clearly emerges is that the circuit courts, with the exception of the Ninth Circuit, are upholding pendant party jurisdiction with the limit allowed by the Supreme Court. Thus it appears that reading the language of *Aldinger* restrictively would not comport with the clear judicial reasoning of most of the courts of appeals.

While the trend may be as above posited, do the Fourth Circuit opinions in *Kenrose* and *Parker* so circumscribe this Court that even consideration of the exercise of pendant party jurisdiction would be improper? *Kenrose* was couched in sweeping language but, as noted above, the section of it quoted with approval by the Supreme Court in *Aldinger* dealt with the impropriety of exercising pendant jurisdiction when the claims could all be settled in State court. *Parker* makes it clear that in the context of a diversity claim, the Fourth Circuit will prohibit the exercise of pendant jurisdiction over an additional non-diverse party. "We thus adhere to our ruling in *Kenrose*, at least in the circumstances of a case such as this, and conclude that there is not ancillary federal jurisdiction of the plaintiff's claim against Moore." *Parker*, 528 F.2d at 766. The broad language employed in *Kenrose* is considerably narrowed by the language above from *Parker* and neither the facts nor the law laid down in *Kenrose* and *Parker* controls the situation with which this Court is faced.

■ Since the Court does not believe itself forbidden by *Kenrose* and *Parker* from considering the possible exercise of pendant jurisdiction, the Court must apply the test set out in *Aldinger* in light of the case law discussed above. *Aldinger* clearly directs the lower courts to consider the relevant statutory language for the purpose of determining whether Congress might have intended the possible appending of a State

claim to the claim based on the federal jurisdictional statute. The general maritime law claim against defendant Standard Products has as its jurisdictional base, 28 U.S.C. § 1333.[2] This is a broadly worded jurisdictional statute giving the federal district courts original jurisdiction of "any civil case of admiralty or maritime jurisdiction," saving to plaintiffs the common law remedies that they may have in State courts. Secondly, the fact that "pleadings in admiralty have traditionally been read with liberality," argues in favor of interpreting 28 U.S.C. § 1333 in a broad enough fashion to allow appending of a State tort claim to it. *Leather's Best,* 451 F.2d at 808. Thus, the important statutory analysis which *Aldinger* requires, leads the Court to believe that the general maritime jurisdictional statute is receptive to the exercise of jurisdiction over closely related claims against closely related parties.

This statutory language must be considered in light of the fact that federal courts have exclusive jurisdiction over claims under the general maritime law, the Jones Act, and the Federal Tort Claims Act. Thus we find the situation in this case to be substantially different from that in *Kenrose.* Here only by allowing pendant party jurisdiction can all claims arising out of Dr. Beatley's alleged negligence in the treatment of the plaintiff be tried in one forum.

 It is true that the facts relating to the maritime claim deal with unseaworthiness based upon a failure to provide gloves, while the State tort law claim is medical malpractice. The facts relating to liability are thus disparate. The facts relating to damages, however, are identical. Only because of the malpractice did the initial infection, caused by the absence of gloves, result in the harm to plaintiff for which he here seeks compensation. Thus judicial economy and efficiency are served by the exercise of pendant party jurisdiction here. In these circumstances, the Court can use the general maritime law claim as an anchor for the exercise of pendant party jurisdiction over Dr. Beatley.

## IV

The Court next considers whether the Federal Tort Claims Act, 28 U.S.C. § 2674, can support the jurisdiction in this Court over Dr. Beatley. This count alleges liability on the part of the United States because of the alleged malpractice of its alleged agent, Dr. Beatley. The language above quoted in *Aldinger,* 427 U.S. at 18, 96 S.Ct. 2413, specifically suggesting that pendant party jurisdiction would be proper when the anchor is the Federal Tort Claims Act, is given great weight by this Court. And the Fifth Circuit in *Florida East Coast Railway,* discussed above, specifically approved the exercise of pendant party jurisdiction when the anchor was the Federal Tort Claims Act.

Other courts have also used the Federal Tort Claims Act as an anchor for pendant party jurisdiction over non-diverse defendants. In *Jacobs v. United States,* 367 F.Supp. 1275, 1283–4 (D.Ariz.1973), the court took jurisdiction over a wrongful death claim by an Arizona plaintiff against an Arizona airline pendant to the plaintiff's claim against the United States where the two (2) claims were "inextricably intertwined." That the United States could only be sued in federal court weighed heavily with the court. In *Hipp v. United States,* 313 F.Supp. 1152, 1153–5 (E.D.N.Y.1970), the court exercised pendant party jurisdiction over a tort claim brought by the plaintiff, a New York passenger, riding in a United States Government ambulance, against defendant, a New York driver of an automobile which collided with the ambulance. The anchor was the Federal Tort Claims Act cause of action against the United States. The Court of Appeals cases which were discussed above show the trend of the law in pendant party jurisdiction. *Florida East Coat Railway,* *Jacobs* and

---

**2.** 28 U.S.C. § 1333 reads in pertinent part as follows:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

*Hipp* show that the trend is not turned aside when the anchor is the Federal Tort Claims Act.

*Aldinger,* 427 U.S. at 17, 96 S.Ct. 2413, tells us to analyze the relevant statutory language. The salient feature of 28 U.S.C. § 2674 is that "[t]he United States shall be liable . . . to the same extent as a private individual under the circumstances." This language is by no means restrictive. This language evinces a congressional purpose to have the United States treated as any other party in regard to tort claims. *Rayonier, Inc. v. United States,* 352 U.S. 315, 319–320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States,* 350 U.S. 61, 67–68, 76 S.Ct. 122, 100 L.Ed. 48 (1955). As any individual party sued in tort would expect to be joined by another party defendant if there were a common nucleus of operative facts holding both defendants potentially liable, Congress could not have meant to restrict joinder of other defendants with the United States under the Federal Tort Claims Act when Congress' purpose was to have the United States treated as any other defendant sued in tort.

■ The dicta in *Aldinger,* the case law noted above, the exclusive jurisdiction of the federal courts over actions under the Federal Tort Claims Act, the statutory language of the Federal Tort Claims Act, and Congress' intent when passing it all lead to the conclusion that this Court can use the Federal Tort Claims Act cause of action as an anchor for the exercise of pendant party jurisdiction over Dr. Beatley. Conversely, neither the facts nor the law in *Kenrose* and *Parker,* as noted above, prohibit the Court from exercising pendant party jurisdiction over Dr. Beatley.

### V

Under these circumstances the Court is called upon to exercise discretion as to whether to permit the action to proceed against the pendant party. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) dealt with pendant jurisdiction of claims, not parties, but it was the language in *Gibbs* which helped trigger much of the law allowing exercise of pendant party jurisdiction. Thus, the language in *Gibbs* that pendant jurisdiction may be exercised where the claim "derive[s] from a common nucleus of operative fact" *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138, continues to be the *sine qua non* of the exercise of pendant party jurisdiction. It is clear that a common nucleus of operative facts is present in this case. Whether Dr. Beatley was negligent is the operative factor in the Federal Tort Claims Act claim and it is central to the general maritime and Jones Act claims. The fish slime infection unaggravated by the subsequent malpractice alleged would be of no consequence.

In addition to the factual question being closely interwoven, this is a case where the plaintiff can only get full relief in the federal forum. This weighed heavily with the Court in *Aldinger* and thus weighs heavily with the Court here. The increase in efficiency, judicial economy and fairness to the plaintiff as well as to the defendants that results from one trial of the entire action leads the Court to believe that this is a case where its discretion should be exercised in favor of pendant party jurisdiction over Dr. Beatley.

An appropriate order shall issue.