**Felix B. FEIGLER, Plaintiff-Appellant,**

**v.**

**TIDEX, INC., et al.,
Defendants-Appellees.**

No. 86–3684

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1987.

Douglas M. Schmidt, Peter R. Borstell, New Orleans, La., for plaintiff-appellant.

Margot Mazeau, George W. Healy, III, New Orleans, La., for Tidex.

Madeline Fischer, New Orleans, La., for Michael J. Cali & Travelers Ins.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

This appeal challenges a jury verdict in favor of the employer in a Jones Act action, an award of maintenance, and a jury verdict on a related tort claim. Before considering the merits, we address, *sua sponte*, a serious jurisdictional question. Concluding that we have the requisite jurisdiction, we review the merits and affirm.

### Background

Felix B. Feigler was a seaman employed by Tidex, Inc. aboard the M/V EBB TIDE II off the coast of Nigeria. On January 20, 1982, Feigler injured his back in a slip-and-fall accident on the vessel. Feigler claimed that he was hurrying to repair a broken fuel line when he slipped on a piece of plastic which was loose on the deck. No one else witnessed the fall; no one else saw the plastic.

Feigler continued to work for four or five days and then went ashore. Three days later he was examined by a physician

in Nigeria who prescribed a rubbing lotion, pain medication, and light duty for ten days. On March 9, 1982 Feigler returned by air to his home in New Orleans. While on route home from the airport the vehicle in which Feigler was traveling was struck from the rear by a vehicle driven by Michael J. Cali. The Cali vehicle was insured by The Travelers Insurance Company.

Invoking the Jones Act and general maritime law, Feigler sued Tidex for personal injuries and maintenance and cure. He joined Cali and Travelers for injuries sustained in the auto accident. Travelers conceded liability; only quantum was contested. Prior to trial, the question of the proper daily rate of maintenance was referred to a magistrate. All other maintenance and cure issues were referred to the merits. After a hearing the magistrate made recommendations which were adopted by the district court. The case was tried to a jury which exonerated Tidex, found that Feigler was 80% responsible for his injuries, found that his back injury was caused 85% by the accident aboard the EBB TIDE II and 15% by the auto collison, and determined that the full measure of damages, before adjustment for his negligence, totaled $38,940. On appeal Feigler challenges the jury's findings and the magistrate's determination of the daily rate of maintenance.

### Analysis

■ Although no party questions federal jurisdiction, we are obliged to do so *sua sponte*. *In re Lift & Equipment Service, Inc.*, 816 F.2d 1013 (5th Cir.1987); *Giannakos v. M/V BRAVO TRADER*, 762 F.2d 1295 (5th Cir.1985); *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir.1981) ("Because we may not proceed without requisite jurisdiction, it is incumbent upon federal courts—trial and appellate—to examine constantly the basis of jurisdiction, doing so on our own motion if necessary.").

Feigler's claim against Cali and Travelers is based solely on state law; no federal question is involved. There is no diversity of citizenship between the parties. Accordingly jurisdiction does not lie under either 28 U.S.C. § 1331 (federal question) or § 1332 (diversity). As the district court recognized when confronted with this issue, the only basis for Cali's presence in this litigation was the relationship his negligence bore to the federal actions against Tidex. Feigler's assertion of a back injury is at the core of both the state law and federal claims. The district court found this relationship sufficient to support pendent-party jurisdiction. For the reasons assigned, we agree.

### Pendent-Party Jurisdiction

■ Article III of the Constitution grants the authority for federal courts to entertain "cases and controversies." In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), Chief Justice John Marshall explained that in vesting jurisdiction to hear a "case," the Constitution empowers federal courts to resolve state law questions which are natural incidents of the legitimate exercise of the federal judicial power. Thus, "when a question to which the judicial power of the Union is extended by the Constitution, forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts [trial courts] jurisdiction of that cause, although other questions of fact or of law may be involved in it." *Id.* at 823.

From Justice Marshall's scholarly analysis in *Osborn*, modern federal pendent jurisdiction evolved. The paradigm is illustrated by *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which permits a federal court to adjudicate state claims between parties presenting justiciable federal claims, if the state and federal claims "derive from a common nucleus of operative fact ... [so that a party] would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725, 86 S.Ct. at 1138.

The rationale of this traditional pendent jurisdiction has been extended beyond the classic *Gibbs* scenario to cases such as that presented to us today, where the plaintiff asserts federal claims against one defend-

ant, while simultaneously asserting state law claims against a different defendant. In the *Gibbs*-type case, the defendant is subject to suit in federal court and the court merely adds on a state-law dispute. Pendent-party jurisdiction critically differs, for in those instances the defendant is not independently subject to suit in federal court on the particular claim advanced. When pendent-party jurisdiction is permitted, a party not otherwise amenable to suit in federal court may nonetheless be sued there because the plaintiff has pressed a cognizable federal claim against another. *See generally* Currie, *Pendent Parties*, 45 Chicago L.Rev. 753 (Spring 1978); Comment, *A Closer Look at Pendent and Ancillary Jurisdiction: Toward a Theory of Incidental Jurisdiction*, 95 Harv.L.Rev. 1935 (June 1982); Note, *Federal Pendent Party Jurisdiction and United Mine Workers v. Gibbs—Federal Question and Diversity Cases*, 62 Va.L.Rev. 194 (1976).

The Supreme Court addressed this difference, and the issue of pendent-party jurisdiction, in *Aldinger v. Howard*, 427 U.S. 1, 14, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276, 286 (1976):

> The situation with respect to the impleading of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to implead an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply be-

cause his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact."

One might take these observations to foreclose any application of pendent-party jurisdiction. But *Aldinger*[1] has not been viewed that restrictively. Every circuit which has considered the matter, save the Ninth, has recognized the discretion in the trial court to exercise pendent-party jurisdiction. *Federal Deposit Insurance Corp. v. Otero*, 598 F.2d 627 (1st Cir.1979); *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179 (7th Cir.1984); *State of North Dakota v. Merchants National Bank and Trust Co.*, 634 F.2d 368 (8th Cir.1980) (en banc); *Stewart v. United States*, 716 F.2d 755 (10th Cir.1982); *First Alabama Bank v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir.1984); *Lykins v. Pointer, Inc.*, 725 F.2d 645 (11th Cir.1984). *But see Carpenters Southern California Admin. Co-op. v. D & L Camp Const. Co.*, 738 F.2d 999 (9th Cir.1984). In short, "[m]ost courts of appeals that have considered the issue have had no difficulty extending *Gibbs* to cases in which an additional party not subject to the federal claim is brought in to answer a state one." Currie, *Pendent Parties*, 45 Chi.L.Rev. at 754.

Today we consider whether claims against one defendant under the Jones Act and general maritime law can support pendent-party jurisdiction of a state law claim against another, non-diverse defendant. Bearing to the course charted by almost all of our circuit colleagues, we conclude that they may.

The circuit courts addressing the issue have held that pendent-party jurisdiction may be supported by an admiralty claim. *See, e.g., National Resources Trading, Inc. v. Trans Freight Lines*, 766 F.2d 65 (2d Cir.1985). Even the Seventh Circuit, somewhat querulous about the general vitality of pendent-party jurisdiction post-*Al-*

---

1. The specific issue in *Aldinger* was whether a plaintiff urging violations of his civil rights under 42 U.S.C. § 1983 could join a state law action against a local governmental body. The Court read the legislative history of the civil rights statutes to forbid suit against a state political subdivision, and therefore implicitly to forbid pendent-party jurisdiction. *But see, Monell v. New York City Dept. of Social Services,*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*dinger,* had no pause in the presence of admiralty jurisdiction, holding that "pendent-party-defendant jurisdiction survives in the admiralty field, where there is a strong policy of consolidating as many claims as possible in one forum." *Bernstein v. Lind-Waldock & Co.,* 738 F.2d 179, 187 (7th Cir.1984) (providing an extensive discussion). *In re Oil Spill by Amoco Cadiz,* 699 F.2d 909 (7th Cir.1983). Likewise, several district courts have opined that pendent-party jurisdiction is appropriate in the admiralty setting. *See, e.g.,* the scholarly opinion in *Syndicate 420 at Lloyd's of London v. Glacier General Assurance Co.,* 633 F.Supp. 428 (E.D.La. 1986); *Lingo v. Great Lakes Dredge & Dock Co.,* 638 F.Supp. 30 (E.D.N.Y.1986); *Wood v. Standard Products Co., Inc.,* 456 F.Supp. 1098 (E.D.Va.1978).

Although we previously have not addressed pendent-party jurisdiction in an admiralty case, two decisions provide helpful signals. In *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035 (5th Cir.1983), an action in admiralty, we allowed a defendant to implead a third party on a related claim for which there was no independent jurisdictional basis, concluding that the claim was within the ancillary maritime jurisdiction,[2] and that competence to decide the case survived dismissal of the main demand. *Joiner* has been cited to support pendent-party jurisdiction. *See Bernstein.* Similarly, in *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023 (5th Cir. 1978), we upheld the exercise of pendent-party jurisdiction. In *Dick Meyers* the federal claim supporting a pendent-party claim was against the United States, thus vesting federal jurisdiction, but the court noted that it also had admiralty jurisdiction.

In other cases we have upheld pendent-party jurisdiction in non-maritime settings, including cases where "[t]he facts presented ... do not pose the strongest possible case for jurisdiction." *Boudreaux v. Puckett,* 611 F.2d 1028 (5th Cir.1980); *Smith v. National Flood Insurance Program,* 796 F.2d 90 (5th Cir.1986); *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir.1980).[3]

We hold today that a federal court entertaining a maritime claim, has the discretion to adjudicate non-federal claims derived from a common nucleus of operative fact, including claims against a party not before the court in the federal action.

### Common Nucleus of Operative Fact

Having confirmed the principle of pendent-party jurisdiction, we next examine the facts to determine whether the claims against Tidex and Cali were sufficiently intertwined to warrant the exercise of that jurisdiction. We review the trial court's ruling under the abuse-of-discretion standard. *Zabkowicz v. West Bend Co.,* 789 F.2d 540 (7th Cir.1986).

Although the two accidents were geographically distant, one off the coast of Nigeria and the other in the New Orleans area, the injury claims overlap. Feigler sought recovery for injury to his back; he presented only one complaint. The extent of the injury resulting from the accident in New Orleans could not be determined without a concomitant decision about the extent of the injury from the fall on the rig, and vice-versa. This single-injury syndrome provides the common nucleus of operative fact sufficient to support pendent-party jurisdiction. We affirm the trial court's dis-

---

**2.** The reference to "ancillary jurisdiction" might suggest a distinction between *Joiner,* which involved a third-party demand, and the instant case, which involves a non-federal claim "pended" to the plaintiff's federal claim. In *Aldinger,* the Supreme Court pointedly abjured any attempt to delineate between pendent and ancillary jurisdiction, and questioned "whether there are any 'principled' differences" between them. 427 U.S. at 13, 96 S.Ct. at 2420, 49 L.Ed.2d at 285.

**3.** We have joined the other circuits in refusing to permit the use of pendent-party jurisdiction where the federal claim is supported only by diversity of citizenship. *Birmingham Fire Ins. Co. v. Winegardner and Hammons, Inc.,* 714 F.2d 548 (5th Cir.1983). *See also Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005 (7th Cir.1982). To permit such actions would compromise the venerable "complete diversity" rule announced in *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

cretionary ruling exercising pendent-party jurisdiction.

### *The Merits*

■ We finally reach the merits, almost anticlimactically. Feigler challenges the findings of the jury. We review those findings under the deferential standard announced in *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), reversing only if there is insubstantial evidence to support the verdict. Our examination of the record reflects ample support for the jury's findings.

Feigler was the only eyewitness to the accident on the EBB TIDE II and the only person to testify about his fall and the piece of plastic on the deck. Other crew members disclaimed knowledge of both. There was testimony about the vessel and its operation. The jury was charged properly on the high duty of care an employer owes a seaman, and the limited measure of self-protection a seaman must exercise. So charged, the jury was entitled to find no unseaworthiness or other accountability on the part of Tidex and to lay responsibility for the fall on Feigler. It obviously did so.

Further, the jury's attribution of Feigler's injuries 85% to the EBB TIDE II accident and 15% to the auto accident also is supported adequately by the evidence. The claimed injury is a low back injury. After being rear-ended by Cali, Feigler was treated only for cervical discomfort; he made no complaint about his low back. The jury was within its province to decide that the low back injury was largely the result of the fall on the rig. In addition, the jury has broad discretion in setting quantum. Viewing the evidence in a light most favorable to the verdict persuades that Feigler suffered a minor injury which resulted in little or no permanent disability, and that the jury's damage award is within its wide range of authority. The damage award does not shock the judicial conscience.

■ The last assignment of error relates to the award of maintenance and cure. Feigler lived with his parents and paid at least his share of household expenses.[4] After the hearing before the magistrate, and upon the magistrate's recommendation, the district court set the rate of maintenance. Feigler asks that we review that setting. We cannot do so.

Although Feigler sought maintenance and cure in his complaint, insofar as the record before us reflects, after the trial court accepted the magistrate's recommendation the matter dropped into a void. There is no reference to maintenance or cure in the pretrial order or its amendments, in the jury charge, or in the interrogatories to or answers by the jury. Nor is there any reference to this claim in the motion for j.n.o.v. or new trial. It is axiomatic that matters, particularly factual matters, not presented to the trial court, or abandoned or not adequately preserved there, are not subject to appellate review. *Clark v. Aetna Cas. & Surety Co.,* 778 F.2d 242 (5th Cir.1985); *Cookish v. Cunningham,* 787 F.2d 1, 6 (1st Cir.1986) ("We have recently held that an issue raised in the pleadings only was not 'presented' to the trial court, and cannot be argued on appeal. *Wallace Motor Sales Inc. v. American Motor Sales Corporation,* 780 F.2d 1049 (1st Cir.1985)."). The maintenance issue has not been preserved for appeal; there is nothing for us to review.

AFFIRMED.

---

**4.** The magistrate was apparently of the view that certain of our precedents precluded maintenance awards to seamen cared for by the family. *See Harper v. Zapata Offshore,* 741 F.2d 87 (5th Cir.1984); *Curry v. Fluor Drilling Services,* 715 F.2d 893 (5th Cir.1983); *Marine Drilling, Inc. v. Landry,* 302 F.2d 127 (5th Cir.1962) (all holding no maintenance awardable because there was insufficient proof of expenses to seaman). That is an overly broad analysis. Maintenance is permissible where family care is not purely gratuitous and expenses attributable to the seaman are actually proven. *McCormick Shipping Corp. v. Duvalier,* 311 F.2d 933 (5th Cir.1963).