**Kally C. & Peggy Ann MILLER**

v.

**GRIFFIN–ALEXANDER DRILLING COMPANY, et al.**

**Civ. A. No. 85–0337–L.**

United States District Court,
W.D. Louisiana,
Lafayette/Opelousas Division.

May 11, 1988.

---

Neblett, Beard and Arsenault, Richard J. Arsenault, Alexandria, La., Preis, Kraft, Laborde & Daigle, Edwin G. Preis, Jr. and D.C. Panagiotis, Lafayette, La., for defendants.

Pugh & Boudreaux, Charles Boudreaux, Lafayette, La., for Walter B. Comeaux & Cameron, Parish Hosp. Svc. Dist.

Terriberry, Carroll & Yancey, Robert S. Reich, New Orleans, La., for Bethlehem Steel Corp.

Raggio, Cappel, Chozen & Berniard, L. Paul Foreman, Lake Charles, La., for Richard D. Sanders, M.D. & Richard D. Sanders, M.D., A Professional Medical Corp.

Roy, Carmouche, Bivins, Judice, Henke & Breaud, Harmon F. Roy, Lafayette, La., for Edmund Nagem, Jr., M.D., James R. Bozeman, M.D. and La Medical Mut. Ins. Co.

Lawrence J. Smith & Associates, Joe A. Sigman, New Orleans, La., for plaintiffs.

## RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on a Motion to Dismiss filed by defendants Dr. Richard Sanders, South Cameron Memorial Hospital, Dr. James Bozeman, Dr. Edmund Nagem, Dr. Walter Comeaux and Our Lady of Lourdes Hospital.

Plaintiff alleges that on June 12, 1984 he was injured while employed on a jack-up rig as a mud man by Griffin–Alexander Drilling Company. Apparently, plaintiff slipped and fell while climbing down a ladder.

On February 6, 1985 plaintiff commenced this action against Griffin–Alexander and its insurers. Plaintiff invoked our jurisdiction under the Jones Act and the general maritime law, and requested a trial by jury. *See* Plaintiff's Complaint.

Plaintiff also alleges injuries from various acts of negligence in the course of his medical treatment. On June 17, 1987 plaintiff named as additional defendants several doctors and hospitals, the movants herein. Plaintiff supplemented his jurisdictional grounds by invoking our "ancillary" jurisdiction. *See* Plaintiff's [Third] Supplemental and Amending Complaint. On July 31, 1987, plaintiff set forth his negligence claims against movants again, and designated them as "maritime" torts. *See* Plaintiff's Fourth Supplemental and Amending Complaint.

Plaintiff contends that all the defendants are "jointly, severally and solidarily" liable for his injuries and seeks damages of $8,000,000.00. *See* Plaintiff's [Third] Supplemental and Amending Complaint and Plaintiff's [Fifth] Amended Complaint.

On September 18, 1987 movant-medical defendants filed this motion seeking dismissal of plaintiff's claims pursuant to Fed. R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter, and alternatively, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argue that plaintiff has not complied with the statutory requirements of the Louisiana Medical Malpractice Act, 1975 La.Acts 817 (current version at LSA–R.S. § 40:1299.41 *et seq.*), which are applicable to plaintiff's claims under Louisiana law.[1] Plaintiff contends that his claims are maritime in nature and invokes our admiralty jurisdiction. Therefore, plaintiff contends, the law applicable to his claims is federal admiralty law, not Louisiana law. Plaintiff has not alleged diversity of citizenship. In fact, the pleadings suggest that plaintiff and movants are citizens of Louisiana and that complete diversity is lacking. The parties have not briefed other grounds for our subject matter jurisdiction. Plaintiff has, however, alleged our "ancillary" jurisdiction.[2] It is our continuing duty to examine the basis of jurisdiction, *sua sponte* if necessary. *In re*

---

1. With agreement of all counsel, we set a June 1, 1988 deadline for a medical review panel to render its decision regarding plaintiff's claims. Minute Entry dated December 28, 1987. By letter dated March 15, 1988, from co-counsel for movants, an extension of the June 1 deadline to July 15 was requested because of continuing discovery matters. We were informed by letter dated April 4, 1988, also from co-counsel for movants, that the parties had finally agreed upon a chairperson for this panel.

2. The Supreme Court has observed that the doctrines of pendent and ancillary jurisdiction "are two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?" *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 370, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274, 280 (1978). And, although the Supreme Court has questioned "whether there are any 'principled' differences" between the two doctrines, *Aldinger v. Howard,* 427 U.S. 1, 13, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276, 285 (1976), there are differences. *See* Hoar, *Unravelling the 'Pendent Party' Controversy: A Revisionist Approach to Pendent and Ancillary Jurisdiction,* 64 B.U.L.Rev. 895, 900 (1985). Where, as here, plaintiff 'pends' to his federal claim a non-federal claim, the jurisdictional doctrine is more properly termed 'pendent.'

*Lift & Equipment Service, Inc.,* 816 F.2d 1013 (5th Cir.1987); *Save the Bay, Inc. v. U.S. Army,* 639 F.2d 1100 (5th Cir.1981). We recognize, and therefore will address, the exercise of pendent jurisdiction as an independent basis for subject matter jurisdiction over plaintiff's medical negligence claims.

We will first consider defendants' Motion under Rule 12(b)(1) and then under Rule 12(b)(6).

### SUBJECT MATTER JURISDICTION

We shall address:

(1) Whether plaintiff states a cause of action in maritime tort; and

(2) Whether plaintiff's claims are properly within our pendent jurisdiction.

#### 1. MARITIME TORT

We have previously analyzed the maritime character of treatment by a land-based doctor. *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413 (W.D.La.1988). Our discussion here, in large part, reiterates the analysis in *Harrison.*

■ Whether admiralty subject matter jurisdiction of an alleged tort exists is a two part determination: (1) There must be "maritime locality," i.e., the injury must occur on or over navigable water; and (2) There must be a "maritime nexus"—a significant relationship between the wrong and traditional maritime activities, involving navigation or commerce on navigable waters. *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300, 305 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S.

249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972); *Molett v. Penrod Drilling Co.,* 826 F.2d 1419, 1426 (5th Cir.1987); *Woessner v. Johns–Manville Sales Corp.,* 757 F.2d 634, 638 (5th Cir.1985). Plaintiff's medical negligence claims fail to satisfy either part of this test.

■ Unlike a case involving aircraft, *see Executive Jet,* 409 U.S. at 266, 93 S.Ct. at 503, 34 L.Ed.2d at 466, the locus in this case is not difficult to determine. It is clear under the facts of this case that the medical malpractice, if any, occurred on land, *not* "on or over navigable waters." The "substance and consummation" of the treatment occurred entirely on land. *Smith & Son, Inc. v. Taylor,* 276 U.S. 179, 180, 48 S.Ct. 228, 229, 72 L.Ed.2d 520, 522–23 (1928).

Plaintiff was not working aboard a vessel on navigable waters at any time while he was receiving medical treatment from movants. On the contrary, plaintiff's medical treatment occurred entirely on land. Thus, the medical treatment, whether negligent or otherwise, took place entirely on land and the effects of that treatment occurred entirely on land.

Furthermore, we decline to locate plaintiff's injury upon navigable waters merely from the fact that plaintiff may never return to work as a seaman. Otherwise, every land-based injury to a seaman would give rise to a maritime tort because the seaman would be absent from his work.[3]

■ Plaintiff's claims also fail the nexus requirement of the two-part test. In determining whether a significant relationship to

---

**3.** Plaintiff refers us to *Parker,* as must any litigant who seeks to bring a land-based, treating physician within our admiralty jurisdiction. *Parker v. Gulf City Fisheries,* 803 F.2d 828 (5th Cir.1986). But, *Parker* is distinguishable from the matter before us. In *Parker,* the land-based physician was *treating* the ship's captain, albeit through his wife, as a "patient while he was on a voyage as a seaman." *Id.* at 828. Thus, the *Parker* court observed, "It is difficult to conceive of a tort more intimately related to maritime activities than causing illness to a seaman during the course of a voyage." *Id.* at 830. And the doctor "knew that Parker was at sea when he gave the medical advice." *Id.* However, plaintiff Mr. Miller was never treated while at sea.

He was treated while on land. Defendant Dr. Richard Sanders, the first physician to see plaintiff, sent plaintiff back offshore. But, there is no evidence that Dr. Sanders was thereby still treating plaintiff. Indeed, there is no indication that plaintiff ever saw Dr. Sanders again. Presumptively then, Dr. Sanders' treatment was completed when he released plaintiff from the emergency room of South Cameron Memorial Hospital. Plaintiff incurred no illness or injury at sea while under the treatment of a physician. Nor were any of the defendants treating plaintiff while he was at sea. Therefore, in this matter, there was, unlike *Parker,* no medical treatment "whose impact occurred at sea." *Id.* at 829.

traditional maritime activities exist, we apply the three indicia suggested by the Supreme Court in *Executive Jet* and *Foremost Ins. Co.*, as paraphrased in *Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1426 (5th Cir.1987): (1) The impact of the event on maritime shipping and commerce; (2) The desirability of a uniform national rule to apply to such matters; and (3) The need for admiralty "expertise" in the trial and decision of the case. *See also, Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). We apply these guidelines to the facts of this case.

■ We consider first the impact of the alleged malpractice on shipping and commerce. The activity involved in plaintiff's claims—a seaman receiving medical treatment from land-based physicians—is not itself a form of maritime activity. The treating physician is not a ship's doctor. The function and roles of the parties involved are those of any land-based doctor-patient relationship. Certainly, a land-based physician does not engage in maritime business simply because during the course of his regular practice he treats a patient who happens to be a seaman. The maritime industry, like other industries, has regular procedures for replacing absent seamen whether the absence is brought about by sickness, old age, retirement, simple failure to report, quitting or otherwise. None of these has a significant, or indeed insignificant impact on maritime shipping. The hiring or replacement procedures are designed to insure that an absentee seaman will have no impact on maritime shipping. Thus, plaintiff has not established that these malpractice claims will have any impact on maritime shipping or commerce.

Nor is there any need or desirability for a uniform national rule to apply to land-based medical treatment for an injured seaman. In fact, it is nationally recognized that the standards of medical malpractice are a matter of local and state concern. "We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is *state* law which controls in cases such as this." *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1038 (5th Cir.), *appeal following remand*, 688 F.2d 256, 260–61 (5th Cir.1982) (citing *United States Lines, Inc. v. U.S.*, 470 F.2d 487, 491 (5th Cir.1972) (hospital located in Texas, Texas state law applied to shipowner's third-party claim against hospital)); *Penn Tanker v. U.S.*, 409 F.2d 514, 519 at n. 9 (5th Cir.1969) (hospital located in Georgia, Georgia state law applied to shipowner's third-party claim against hospital); *McCann v. Falgout Boat Co.*, 44 F.R.D. 34 (S.D.Tex.1968) (shipowner's third-party claim against doctor arises under state law); *Wood v. Standard Products Co., Inc.*, 456 F.Supp. 1098, 1103 (E.D.Va.1978) (injured seaman's claim against onshore doctor does not arise under federal maritime law, but is a state law claim pendent to an admiralty action). On the contrary, the facts and authorities establish and recognize the need for local and state control of medical malpractice claims. The Louisiana Legislature has expressed its special interest in providing for the uniform treatment of medical malpractice claims brought against health care providers qualified to practice in Louisiana. *See* LSA–R.S. § 40:1299.41 *et seq.*

The third indicia establishing nexus is the need for admiralty expertise. If there is a need for admiralty expertise in the trial of this medical malpractice claim, the plaintiff has failed to disclose it. The record is absolutely bare. Must these doctors be skilled in seamanship, the care, maintenance and use of vessels and maritime equipment? Did they violate rules of the sea?

The traditional concepts of the role of admiralty law do not justify treating this matter as a maritime tort. In *Executive Jet, supra*, the Supreme Court described the matters which traditionally have been the concern of admiralty law. Such matters include dealing with navigational rules, apportionment of liability for maritime disasters, protection of seamen aboard ship, and establishment of uniform rules

for maritime liens, captures of prizes, liability for cargo damage, and claims for salvage. 409 U.S. at 269–70, 93 S.Ct. at 505, 34 L.Ed.2d at 468. In *Foremost Ins. Co.,* the court also pointed out that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." 457 U.S. at 674, 102 S.Ct. at 2658, 73 L.Ed.2d at 305. The need for a uniform development of the law governing the maritime industries is also an overriding concern of federal courts when applying admiralty law. *Foremost Ins. Co., supra,* at 677, 102 S.Ct. at 2659, 73 L.Ed.2d at 307; *Peytavin v. Govt. Employees Ins. Co.,* 453 F.2d 1121, 1127 (5th Cir.1972). "Disputes not involving these interests are not within the admiralty jurisdiction of the federal courts." *Harville v. Johns–Manville Products Corp.,* 731 F.2d 775, 786 (5th Cir.1984).

We are guided by the Supreme Court's admonition in *Executive Jet* that federal courts are to interpret congressional grants of admiralty jurisdiction restrictively where their exercise may preempt state regulation of matters traditionally committed to local resolution:

[I]n determining whether to expand admiralty jurisdiction, "we should proceed with caution...."

"Due regard for the rightful independence of state governments, which

should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined."

In the situation before us, which is only fortuitously and incidentally connected to navigable waters and which bears no relationship to traditional maritime activity, the [state] courts could plainly exercise jurisdiction over the suit, and could plainly apply familiar concepts of [state] tort law without any effect on maritime endeavors.

*Executive Jet,* 409 U.S. at 272–73, 93 S.Ct. at 506–07, 34 L.Ed.2d at 470 (citations and footnotes omitted). Therefore there is a complete absence of any maritime nexus or significant relationship between the alleged malpractice and traditional maritime activities involving navigation or commerce on navigable waters.

Having failed both the "maritime locality" and the "maritime nexus" tests, we hold that the plaintiff's claims against these health care providers are not maritime torts and do not invoke federal admiralty jurisdiction.[4]

## 2. PENDENT JURISDICTION

■ The modern doctrine of pendent jurisdiction derives from *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[5] A fed-

---

**4.** We also note that the medical treatment provided plaintiff does not give rise to an implied maritime contract. "A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract." *Joiner v. Diamond M Drilling Co.,* 677 F.2d at 1038 and 688 F.2d at 260. *See also, Penn Tanker v. U.S.,* 409 F.2d 514, 517–18 (5th Cir.1969). Furthermore, Louisiana law prohibits prosecution of a medical malpractice claim on a theory of implied contract or implied warranty. LSA–R.S. § 40:1299.41(C).

We also observe, in concluding our analysis of maritime jurisdiction over this matter, the nascent rumblings against characterizing so much of the oil-related offshore activity as maritime. *Thurmond v. Delta Well Surveyors,* 836 F.2d 952 (5th Cir.1988); *Houston Oil & Minerals v. American Int'l Tool,* 827 F.2d 1049 (5th Cir. 1987); *Sohyde Drilling & Marine Co. v. Coastal States Gas Producing Co.,* 644 F.2d 1132 (5th Cir.1981), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). Like medical malpractice, oil and gas production is a singularly

state, not federal maritime, concern. *See* Outer Continental Shelf Lands Act, 43 U.S.C. § 1333; *Thurmond, supra* at 955 n. 16.

**5.** *Gibbs* deals with pendent claims, not pendent parties. The Supreme Court has never addressed the constitutionality of pendent party jurisdiction. However, in *Aldinger,* the Court was critical of pendent party jurisdiction:

... it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to implead an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' [quoting *Gibbs* ]

*Aldinger,* 427 U.S. at 14, 96 S.Ct. at 2420, 49 L.Ed.2d at 286. Nonetheless, every circuit which has considered the matter, except the Ninth, has extended the *Gibbs* rationale to pen-

eral court has the power to exercise jurisdiction over an entire action, including state law claims, when the source of the federal claims and state law claims in the action "derive from a common nucleus of operative fact" and are "such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228. Thus, pendent jurisdiction supports "a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. ——, ——, 108 S.Ct. 614, 618, 98 L.Ed.2d 720, 729 (1988).

We question whether a common nucleus exists between plaintiff's federal claims and plaintiff's state claims. *See Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413 (W.D.La.1988). As regards quantum, there is arguably a common nucleus: both claims concern plaintiff's injuries, sustained either as a result of the negligence of Griffin–Alexander Drilling Company, or the various health care providers, or both. We find such connection too attenuated to satisfy the constitutional requisites for our exercise of pendent jurisdiction. *Cf. Fiegler v. Tidex*, 826 F.2d 1435 (5th Cir.1987). The operative facts in the sources of plaintiff's federal and state claims are simply too dissimilar. The federal claims involve working conditions aboard a jack-up drilling rig. The state claims concern medical practices of land-based physicians and hospitals. The disparate legal theories, Jones Act negligence and unseaworthiness on the one hand, and medical malpractice on the other hand, reflect this lack of similarity in the operative facts before us. Nor is the desirability of trying both claims in the same forum self-evident. Indeed, plaintiff has cited us to no such case. But, even if our exercise of pendent jurisdiction in this matter is constitutionally proper, our inquiry would not end. We are not required to exercise pendent jurisdiction in this case. Because as emphasized in *Gibbs*, "pendent jurisdiction is a doctrine of discretion, not

of plaintiff's right." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228.

*Gibbs* distinguished the constitutional power of a federal court to hear state-law claims from the inherent discretion of a federal court to exercise that power. *See Carnegie–Mellon*, 484 U.S. at ——, 108 S.Ct. at 618, 98 L.Ed.2d at 729. Federal courts are courts of limited jurisdiction. Pendent party jurisdiction is not a doctrine for transforming federal courts into courts of general jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276, 286–87 (1976). Rather, the underlying rationale of pendent jurisdiction is convenience, judicial economy and fairness to the litigants. "The Gibbs Court recognized that a federal court's determination of the state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties.... Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, ... the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.... As articulated by Gibbs, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon*, 484 U.S. at —— – ——, 108 S.Ct. at 618–19, 98 L.Ed.2d at 729–30.

In the matter before us, the balance compels us to dismiss plaintiff's claims. These malpractice claims are of fundamental concern to the State of Louisiana, *not* to the federal judiciary. Louisiana has a comprehensive medical malpractice act which provides for administrative review of all malpractice claims. LSA–R.S. § 40:1299.41. Louisiana statutes define the standard of

dent parties. *Feigler v. Tidex, Inc.*, 826 F.2d 1435 (5th Cir.1987).

care and the burden of proof for malpractice claims. LSA–R.S. § 9:2794. If defendants are in fact solidary obligors, as plaintiff alleges, then prescription against them has been interrupted by the filing of plaintiff's complaints. La.C.C. arts. 1799, 3462. Therefore, no prescriptive period has run. No trial has taken place. Any discovery can be utilized in a state court proceeding. Indeed, discovery is still continuing. Furthermore, the effect on judicial economy and convenience is minimal if we try these claims along with plaintiff's Jones Act and unseaworthiness claims. In fact, movants have already requested that we sever the claims against them due to the complexity of the medical issues and the need for review by a medical panel. Nor has a single forum worked in plaintiff's favor. This seriously injured plaintiff filed his complaint over three years ago and has endured interminable—and continuing—delay. We are therefore persuaded not to exercise pendent jurisdiction over plaintiff's state malpractice claims.

Indeed, this proceeding constitutes a classic example of the dangers inherent in the liberal and unrestrained utilization of pendent jurisdiction. *See Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1138–39, 16 L.Ed.2d at 228. We have noted the lack of maritime locality and maritime nexus. We have noted the invasion of a field of litigation fully recognized as one in which the interests of the states are paramount. And, we have noted the violation of the public policy of the State of Louisiana as enunciated by state statute. *See* LSA–R.S. § 40:1299.41 *et seq.* In blatant disregard of the latter, almost two and one-half years after filing his suit against the original defendants, plaintiff made two separate hospitals and four individual doctors parties defendant on a claim of medical malpractice. A hearing before a medical panel might establish how all six of these additional defendants can be liable for malpractice. But, in the absence of such a determination, plaintiff's procedure resembles a shotgun search for an additional defendant with no previous evidentiary basis whatsoever. *See, supra,* fn. 1.

For these reasons, we decline jurisdiction and dismiss plaintiff's pendent claims without prejudice.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■ Even if we retain jurisdiction, we would do so by the application of state law under our pendent jurisdiction and would be compelled nonetheless to dismiss this action as being premature.

Under Louisiana law, no action against a health care provider "may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel...." LSA–R.S. § 40:1299.47(B)(1)(a)(i); *Derouen v. Kolb*, 397 So.2d 791 (La.1981). The submission of medical malpractice claims to a review panel prior to suit is a substantive rule of law. *Seoane v. Ortho Pharmaceuticals, Inc.*, 472 F.Supp. 468, 471 (E.D.La.1979). *See also, Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir.1979) (Florida's Medical Malpractice Act interpreted).

Movants herein are qualified health care providers as defined by LSA–R.S. § 40:1299.41 *et seq.* *See* Certificates of Enrollment attached to defendants' Motion to Dismiss. The plaintiff has asserted negligence claims against the defendants within the scope of LSA–R.S. § 40:1299:41(A)(4). Thus, the claims against defendants are dismissed because the plaintiff has failed to allege the completion of the medical review panel process as required by state law. *See, supra,* fn. 1.

## CONCLUSION

Plaintiff's state law claims against the defendants-health care providers are therefore DISMISSED, without prejudice, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.